KATE SCHRADER, APPELLEE, V. MODERN BROTHERHOOD OF AMERICA, APPELLANT.

FILED JANUARY 24, 1912. No. 16,580.

1. **Insurance:** ACTION ON POLICY: DEFENSE OF SUICIDE: BURDEN OF PROOF. In an action upon a policy of life insurance, the burden

of proof is upon the defendant to prove by a preponderance of the evidence a controverted defense that the assured died as the result of poison, self-administered with suicidal intent.

2. ———: ———: ———: EVIDENCE. The defense in such a case is not made out unless the evidence clearly and unmistakably points to the conclusion of suicide, and to the exclusion of all reasonable probability of death by accident or from natural causes.

3. ———: ———: SUFFICIENCY OF EVIDENCE. The evidence adduced in this case is referred to and commented upon in the opinion, and *held* sufficient to sustain a verdict in the plaintiff's favor.

APPEAL from the district court for Logan county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*J. G. Beeler,* for appellant.

*Wilcox & Halligan,* contra.

ROOT, J.

This is an action upon a certificate issued by the defendant, a fraternal life insurance company. The plaintiff prevailed, and the defendant appeals.

The sole defense is that the assured committed suicide by taking strychnine, and the sole important question here is whether the evidence sustains the verdict. The presumption is against suicide. *Hardinger v. Modern Brotherhood of America,* 72 Neb. 869; *Walden v. Bankers Life Ass'n,* 89 Neb. 546. Upon the issue of suicide, the evidence is in substance as follows: Schrader, the assured, a few days before his arrest on a charge of forgery, purchased 25 cents worth of strychnine from a local druggist, and said at that time that he intended to send it to his parents, who resided at Gandy. Schrader at the time of his death was confined in a jail. Schrader's fellow prisoners testify that a few moments before his fatal illness became evident he retired to a hydrant in close proximity to the latrine, a point which, it may be inferred from the evidence, is screened from the view of persons in the larger room used for a lounging room and

a dining room by the prisoners. These men are of opinion that Schrader, after opening the hydrant, flushed the latrine. Immediately thereafter Schrader returned to the larger room, where the noon-day meal was ready, and there swallowed coffee and ate a part of a slice of bread, but within a few moments was seized with convulsions and fell upon the floor, his muscles jerking, his limbs rigid, and bloody froth appearing upon his lips; then the man's muscles relaxed for a short time, and then subsequently the convulsions followed each other at short intervals; the stricken man called for water, cried out the name of a relative, became black in the face, his jaws became rigid, and within 15 or 20 minutes after the first attack he departed this life. A physician appeared about three minutes before mortal dissolution, and upon trial testified that in his opinion the man died from strychnine poisoning. On cross-examination this witness admitted that many of the symptoms present in Schrader's case would appear in an epileptic attack, and that he made no examination of the man's person. From the testimony of all of the witnesses present it is evident that there was no opisthotonos, but this is in a measure explained by the fact that several of the other prisoners restrained him while he was in the grasp of convulsions. None of the witnesses testify to that hideous distortion of the countenance generally observed in such cases. Dr. McLeay, a physician, in testifying on behalf of the plaintiff, said in substance that the symptoms would occur in a case of uræmia, and many of them would appear in epileptic attacks, and that, while they might indicate strychnine poisoning, they might also indicate morbid conditions produced by other and natural causes, and that an examination of the contents of Schrader's stomach would be necessary in order to make a correct diagnosis of the cause of the man's death. No remnant of any poisonous substance was found on Schrader's person or in his cell, no one saw him swallow anything more harmful than coffee and bread.

It is not shown that Schrader did not send the poison to his relatives. The deputy sheriff searched the prisoner at the time he was incarcerated in the jail, and testifies that he did not find a bottle or other container in the prisoner's clothing or on his person. The search was not so close as to preclude the possibility that the prisoner did not have crystals of the poison in his possession, but the tendency is to prove that he did not take the poison into the jail. It is also proved without dispute that Schrader's relatives had arranged to give a recognizance for his release, and that he knew this fact, and it further appears that after a conference with a Mr. Tanner, less than an hour before Schrader's death, he said to the jailer: "I have got this fixed up." "They will never take me to the penitentiary." These declarations may be ambiguous, but it was competent for the jury to deduce therefrom that Schrader was making satisfactory progress in the matter of securing his freedom, possibly for immunity from prosecution. No post mortem was held on the remains of the deceased, nor, so far as we are advised, was any request made by the defendant of Schrader's surviving relatives that such an examination should be held. Whether Schrader died as the result of poison, and, if so, whether it was self-administered with suicidal intent, must be ascertained from this record, if at all, by a process of deduction from the facts in evidence, sustained or contradicted, as the case may be, by the opinions of two physicians whose conclusions are not entirely harmonious. The jury's verdict that the evidence adduced did not overcome the presumption of accidental death, or death from natural causes, is in our opinion sustained by sufficient evidence. *Hardinger v. Modern Brotherhood of America, Walden v. Bankers Life Ass'n, supra.* The alleged erroneous admission of evidence was not argued at the bar, and should not be considered in the state of the record.

Finding no error in the record, the judgment of the district court is

AFFIRMED.

FAWCETT, J.

The foregoing opinion, prepared by ROOT, J., while a member of the court, is now adopted by and filed as the opinion of the court.

SEDGWICK, J., dissenting.

Some of the facts disclosed by the record are stated in the majority opinion. The record also discloses that when the deceased was charged with forgery he obtained some strychnine at a drug store, stating that he intended to send it to his parents, at another town, to be used by them in killing rats. Afterwards he was arrested and confined in jail. There is no evidence that he sent the strychnine to his parents or that he ever intended to. While the other prisoners were at the dinner table, the deceased passed by the latrine, stopping for an instant, and then went to the dinner table. He was immediately seized with convulsions, as described in the opinion, and in a few moments died. It is shown that a member of his family had been afflicted with epilepsy, and that some of the symptoms which he manifested were also common to epilepsy, but not all of them. He had never been afflicted with epilepsy, and had made no complaint of being ill while in the jail, and had remarked to some of the prisoners, with confidence, that he would never go to the penitentiary. The expert evidence in the record shows that epilepsy is seldom fatal, especially in the first attack. The expert witness called by the plaintiff testified that he had never known of such an instance. It is not necessary to repeat the circumstances recited in the majority opinion, and perhaps unnecessary to mention other circumstances which appear to strengthen the evidence of suicide. If the question of poisoning were involved in a criminal prosecution for felony, this evidence would be regarded as establishing the use of poison beyond a reasonable doubt. This is a civil action, and the jury were required to find their verdict from the preponderance of

the evidence. I think it is clear that the jury has disregarded the evidence, and that the judgment ought to be reversed.

We ought not to establish precedents that lead the trial courts and juries to understand that suicide by poisoning cannot be proved in this state, and so deprive these fraternal societies of a defense to which they are justly and lawfully entitled.