## IN RE CHARLES R. HAWKINS v. KRONICK CLEANING & LAUNDRY COMPANY AND ANOTHER.[1]

November 2, 1923.

No. 23,506.

**Presumption against suicide not conclusive.**
1. The presumption against suicide is a presumption of fact, and a strong one, but it does not control where there is substantial proof, from which rational consideration may reach the conclusion of suicide.

**Cases limited.**
2. Lindahl v. Supreme Court, I. O. F. 100 Minn. 87; Kornig v. Western Life Indemnity Co. 102 Minn. 31, limited.

[1]Reported in 195 N. W. 766.

Upon the relation of Lillian Hawkins the supreme court granted its writ of certiorari directed to the Industrial Commission of Minnesota to review the decision of the commission in proceedings under the Workmen's Compensation Act brought by Charles R. Hawkins, as employe, against Kronick Cleaning and Laundry Company, as employer. Affirmed.

*Trafford N. Jayne,* for relator.

*L. N. Foster,* for respondent.

STONE, J.

Certiorari to review a decision of the Industrial Commission denying to relator compensation on account of the death of her husband while he was in the employ of the laundry company as a driver of a delivery truck.

The deceased's route took him from Minneapolis to Excelsior and other Lake Minnetonka points. At 6:30 in the evening of July 27, 1922, he was found dead at the steering wheel of his truck. It was then on the Minnetonka boulevard, somewhat to the side of the road, between four and five miles from and headed toward Excelsior. Death resulted from a wound caused by a 22 short bullet. It entered his breast, passed entirely through his body and lodged in the side or back. There were bundles of soiled laundry in the car and also bundles ready for delivery. Much of the cargo taken out by deceased that morning had been delivered. When his body was found, the deceased's vest was open; his right trouser's pocket was pulled out and there was no money on his person. His watch chain, broken, was hanging from his vest pocket. The record leaves us in doubt as to whether the watch was missing, but it was worth only $1.50. Two exploded shells lay on the seat. The truck was in gear and the ignition still "on."

The deceased had been in some difficulty with his employer over his accounts. There was, or at least had been, a substantial shortage therein. That morning on the outward bound trip he had purchased a 22 caliber revolver. At the suggestion of the salesman rather than on his own initiative, he purchased also a box of 22 short cartridges. Neither the revolver nor any unexploded cartridges

were found on deceased's person. At a distance of about 175 yards easterly, and towards Minneapolis, from where the truck was found, a revolver answering the description of the one purchased that morning by the deceased had been found by passersby at about 3 p. m. that afternoon. Two chambers had been fired; the others were clean and bright. The finders were on their way to Minnetonka and did not notice the laundry truck, if then it was stopped at the side of the road where later it was found. While in Excelsior, deceased had received a telephone order to return immediately to the laundry in Minneapolis. This condensed statement of facts is taken in the main from relator's brief and presents the question, resolved by the Industrial Commission against the relator, as to whether the deceased came to his death at the hands of highwaymen or from suicide.

If on that question, under the facts stated, there had been a finding that the deceased came to his death in attempting to foil a holdup, or that even without such an attempt he had been murdered by highwaymen, it would follow that his death was due to an injury received in and arising out of his employment. But that was not the conclusion. On the contrary, both the referee who took the evidence, and the Industrial Commission on appeal, found that it was a case of suicide.

In compensation cases, the burden is on the claimant to prove a case within the statute, and that the injuries in question were caused by accident arising out of and in the course of the employment. But the burden is on the employer to prove that an injury was intentionally self-inflicted. Section 9, chapter 82, p. 92, Laws 1921.

So in this case there are two elements operating in relator's favor; the first being that on the issue of suicide the burden is upon the employer; and the second the presumption against suicide. It is upon the latter that counsel for relator so confidently places his argument, and urges that there should be a reversal because of the failure of the referee and Industrial Commission to give *controlling* weight to the presumption against suicide.

It is argued that, where circumstantial evidence is relied on to prove suicide, the party having the affirmative of that issue must

establish facts which preclude any reasonable hypothesis of natural or accidental death, and Lindahl v. Supreme Court I. O. F. 100 Minn. 87, 110 N. W. 358, 8 L. R. A. (N. S.) 916, 117 Am. St. 666, followed in Kornig v. Western Life Indemnity Co. 102 Minn. 31, 112 N. W. 1039, the assigned justification for that argument.

The rule of State ex rel. Niessen v. District Court, 142 Minn. 335, 172 N. W. 133, does not relieve us from the duty of passing on a claim, such as is made here, that the commission has applied an erroneous principle of law in weighing evidence.

"'Gainst self-slaughter" there is a presumption. It is founded on the canons of "the Everlasting," and confirmed by human experience. It is perforce adopted by human judgment. It is a strong presumption and not to be displaced by slight contrary proof. But it is not conclusive, unless there are no circumstances which upon fair consideration might lead a reasonable mind to the conclusion of suicide. It is a presumption addressed entirely to triers of fact, and controls the decision only when there is no substantial proof to the contrary. Such a presumption is not of itself evidence. It has been referred to as "a simple rule to which resort is had when there is a failure of evidence." Duggan v. Bay State St. Ry. Co. 230 Mass. 370, 378, 119 N. E. 757, L. R. A. 1918E, 680. "Presumptions are indulged to supply the place of facts; they are never allowed against ascertained and established facts." Lincoln v. French, 105 U. S. 614, 617, 26 L. ed. 1189.

The proper function of the presumption now under consideration was stated by the late Mr. Justice Day, while he was a circuit judge, as follows: "This presumption must stand in the case, and be decisive of it, until overcome by testimony which shall out-weigh the presumption. It casts upon the defendant who claims that the death was intentional the burden of establishing it by a preponderance of testimony." Standard Life & Accident Insurance Co. v. Thornton, 40 C. C. A. 564, 569, 100 Fed. 582, 587, 49 L. R. A. 116.

"The term 'presumption' is used to signify that which may be assumed without proof, or taken for granted * * * It is asserted as a self evident result of human reason and experience. In its origin, every presumption is one of fact, and not of law. It may,

in course of time, become a presumption of law, and even an indisputable one. Its truth may be so universally accepted as to elevate it to the position of a maxim of jurisprudence. Its convenience, as a rule of decision, may be so generally recognized as to place it in the rank of legal fictions. But so long as it retains its original character as a presumption of fact, it has simply the force of an argument. I Greenleaf's Ev. § 44." Ward v. Metropolitan Life Ins. Co. 66 Conn. 227, 238, 33 Atl. 904, 50 Am. St. 84.

It is clear, therefore, that, in the presence of proof contra, there is nothing conclusive or even dominating about the presumption against self-destruction. All authorities agree that it is one of fact and therefore disputable. Being that, and nothing more, a mere inference or deduction adopted by the law of evidence, "as a self-evident result of human reason and experience," it controls decision only in the absence of opposing proof. It is persuasive; it is a cogent inference, strong argument, and nothing more. It does not take the place of facts proven nor does it remove from the field of judicial consideration any such facts. It is simply a deduction from experience and the knowledge we possess concerning ourselves and our tendency to cling to life rather than to destroy it. Such a deduction does not, we repeat, take the place of facts. On the contrary, it is applied to facts. Given only the fact of death, the presumption against suicide is controlling. But, given in addition to the death, circumstances indicating suicide, it is for the trier of the facts to weigh such circumstances, not only as against contrary proof, but also as against the presumption or inference or deduction, whatever it may be termed, against suicide. And if the trier of facts, where the proof is circumstantial and of such a character as to permit different conclusions to be drawn, has resolved them one way or the other, it is not for the reviewing tribunal to interfere, simply because the conclusion reached is contrary to a presumption, other than one the law makes conclusive.

It has been said that when the facts appear "presumptions disappear." Lincoln v. French, supra. That statement standing alone is not quite accurate. An abundance of facts on both sides of an issue may be in evidence. Yet, it is not only proper, but it is the

duty of the trier of facts, to consider an applicable presumption in connection with the facts. It is an argument for consideration and, in jury cases, one concerning which a proper instruction should be given by the judge. That is what is meant by the statement that a disputable presumption does not take the place of facts, but is to be applied to them and considered with them. It is an inference augmenting the total argument bearing one way or the other.

So our conclusion here is that the employer's effort to sustain the affirmative of the issue of suicide cannot be adjudged a failure because the presumption is against him. There can be no other result, for, from the facts, it is clear that reasonable consideration, allowing full weight to the presumption against it, might still conclude that the deceased's fatal wound was intentionally self-inflicted. We have not arrived at this conclusion without embarrassment, for our views are not altogether in accord with those expressed in Lindahl v. Supreme Court I. O. F. and Kornig v. Western Life Indemnity Co., supra.

It is expressly stated in both of those cases, in substance, that if the known facts are consistent with the theory of natural or accidental death, the presumption against suicide controls decisions, and that, where circumstantial evidence is relied on, the party having the affirmative on the issue of suicide "must establish facts which exclude any reasonable hypothesis of natural or accidental death." Proof meeting that requirement is nothing less than proof beyond a reasonable doubt and ignores the rules of preponderance which prevail in civil cases, even where the issue concerns the cause of the death of a human being. Particularly in a compensation case, no such drastic measure of proof can be demanded. But aside from that, and for all cases, for the reasons indicated, and chiefly because the presumption against self-destruction, however strong, is still a disputable one, we must limit the rule of the Lindahl and Kornig cases to the scope here defined.

The same result, so far as concerns the presumption, was reached in Huestis v. Aetna Life Ins. Co. 131 Minn. 461, 155 N. W. 643. True, the presumption was not mentioned. But if then (1915) it was still thought to have the dominating power attached to it by

the Lindahl and Kornig cases, the verdict which was confirmed should have been directed as a matter of law. It was not so held. In McAlpine v. Fidelity & Casualty Co. of New York, 134 Minn. 193, 158 N. W. 967, the presumption was necessarily for consideration. Again, it was denied a controlling or even dominating effect. Citing Taylor v. Pacific Mut. Life Ins. Co. 110 Iowa, 621, 82 N. W. 326, it was accurately appraised as "only an aid to the other evidence on the subject." It was further observed that much of the difficulty in the adjudicated cases 'has grown out of the failure to clearly define the weight to be given to the presumption."

It is impossible perhaps to specify the *weight* of the presumption. It is easier to state its *nature, place* and *function,* and if they are as we understand them and have attempted here to state them, the conflict and difficulty with which the subject has been surrounded is self-dissipating.

This comment applies also to State ex rel. Oliver 1. M. Co. v. District Court, 138 Minn. 138, 164 N. W. 582, a compensation case. The finding assailed was of accidental death. The presumption was discussed, but assumed to have an argumentative and not a controlling effect. Its *weight* was considered a matter for determination by the trier of fact.

In the instant case, the choice of decision, as to the cause of death, is between murder and suicide. There is a presumption against murder as well as against suicide. If not of the same weight, it has the same genesis and evidentiary use. Both have the same effect in the absence of evidence. Both are to be applied to evidence, but neither necessarily controls a substantial degree of opposing evidence. At that stage both are but arguments for the persuasion of the trier of fact.

. But we have decided this case without reference to the presumption against crime, other than self-slaughter. There has been no reason for complicating the situation by such a diversion.

The facts, with the presumption against self-destruction, might have supported a finding of death from other causes. But the finding of suicide is equally tenable. For that reason we cannot disturb the decision of the industrial commission.

Order affirmed.