EMMA DE BRULER, APPELLANT, v. CITY OF BAYARD, APPELLEE.

FILED MARCH 16, 1933. No. 28591.

*Morrow & Morrow,* for appellant.

*Yale H. Cavett* and *Wright & Wright, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

This is an application for compensation by a widow for the death of her husband, a policeman, employed by the city of Bayard. The defense was suicide. The district court denied compensation.

Fred De Bruler had been night marshal of the city of Bayard approximately six months prior to the 23d day of April, 1930, the date on which he came to his death. On the night of his death he was performing his duties as marshal. At about 1:15 a. m., he and Fred Hughes, a druggist, had a cup of coffee together at a restaurant. From there he and Mr. Hughes walked to the drug store, Mr. Hughes going in, and Mr. De Bruler starting to make his round by going up to the highway and back down the alleys. About an hour later, while Mr. Hughes was still in the drug store, he heard a noise of a gunshot coming from the alley, but did not investigate. Mr. De Bruler was found dead about 6 o'clock the next morning in the alley at the rear of the Palm Theater. He had been dead some time. The Palm Theater, which was about a block south of the drug store, has a small platform off the alley, about 4 feet by 6 feet, upon which

De Bruler's body was found. The platform was high enough so that, when a person was sitting on the platform, his feet would touch the ground. There was a bullet hole in the left side in the region of the heart. The bullet came out on the opposite side, just below the ribs, making a wound where it entered about the size of a dime, the powder burn around it being about the size of a half-dollar. The body was lying on its back, with the feet hanging over the edge of the platform. His large .45 caliber Colt revolver was in his hand, with his thumb through the trigger guard in front of the trigger. The hammer was resting upon the one discharged cartridge shell. The bullet, after leaving the body, ricocheted against objects for about 45 feet down the alley, where it was found.

Druggist Hughes said that when they were in the restaurant together, about an hour before the shot was heard, De Bruler appeared nervous and restless. Some months before his death, he told Charles Bradley, who had known him for four years, at a time when they were visiting about money matters: "Well, there ain't much use of trying. I just as well end it all."

When the body was found, nothing upon his person had been disturbed, and there were no signs of a scuffle in the alley.

1. No evidence was submitted by the widow in support of her application for compensation, as she relied upon the presumption against suicide.

It is insisted by the applicant that the presumption prevails that a sane person will not take his own life. It has been held that the party alleging suicide must prove it, for the mere fact of death in an unknown manner creates no legal presumption of suicide. Lawson, Law of Presumptive Evidence, 242; *Schrader v. Modern Brotherhood of America*, 90 Neb. 683.

The term "presumption" means that which may be taken for granted, or has the force of argument. It is simply a deduction from experience that one has a tend-

ency to cling to life rather than to destroy it. When the question is as to whether a violent death is caused by accident or suicide, the law presumes accident until suicide is established.

This is illustrated by an action brought for compensation, which was allowed by the commissioner and denied by the district court, this court reaffirming the award of the compensation commissioner, where it appeared that the deceased, who was manager of a grain elevator at Minden, was hastening to mail a report on an incoming train to the United States Grain Corporation, and was killed by an oncoming train. It was held that he did not come to his death by wilful negligence, or by suicide, but by an accident occurring in the course of his business. *Farmers Grain & Supply Co. v. Blanchard,* 104 Neb. 637.

2. In the case of *Atlas Brewing Co. v. Industrial Commission,* 314 Ill. 196, a night watchman was making his regular rounds and was required to check in at a box in a barn loft at a certain hour. He was found dead a short time later in this loft; death having occurred from hanging. Upon action for compensation, it was held that the presumption against suicide does not relieve the claimant of affirmatively showing that the death arose out of his employment, nor cast the burden on the employer to prove suicide.

Liability under compensation laws cannot rest upon guess, speculation, or conjecture, upon a choice between two views equally compatible with the evidence, but must be based upon facts established by a preponderance of the evidence.

In *Dodder v. Aetna Life Ins. Co.,* 104 Neb. 70, recovery was denied upon an accident insurance policy for $15,000, growing out of the death of Edward L. Dodder, who was found some seven miles northwest of Florence, Douglas county, sitting in his Cadillac coupé, with the brakes set, and whose death had been caused by a bullet wound in his head from a revolver bullet, and it was held by this court that the presumption against death by suicide

does not prevail in the presence of facts bearing upon the question of whether death is intentional or accidental.

And again, in a compensation case, it was held: "The presumption against suicide is a presumption of fact, and a strong one, but it does not control where there is substantial proof from which rational consideration may reach the conclusion of suicide." *Hawkins v. Kronick Cleaning & Laundry Co.*, 157 Minn. 33, 36 A. L. R. 394.

3. On the other hand, the burden of proof under the workmen's compensation act is upon the applicant, to prove by a preponderance of the evidence that De Bruler came to his death by an accident arising out of and in the course of his employment. This, we believe, the applicant has failed to prove. A careful examination of the facts, with the legitimate inferences which the court is justified in drawing therefrom, leaves scarcely a shadow of a doubt that De Bruler came to his death by his own deliberate act. The presumption against death by suicide is only *prima facie,* and in this case has been rebutted by evidence which clearly and unmistakably points the other way. *Grosvenor v. Fidelity & Casualty Co.*, 102 Neb. 629; *Sawyer v. Mutual Benefit Health & Accident Ass'n*, 121 Neb. 504; *Bartlett v. Eaton*, 123 Neb. 599; *Townsend v. Loeffelbein*, 123 Neb. 791; *Schraner v. Massman Construction Co.*, 48 S. W. (2d) (Mo. App.) 104.

In our opinion, if an inference favorable to the applicant can only be reached by speculation or conjecture, then the applicant cannot recover. Finding no error in the judgment entered by the trial court, the same is

AFFIRMED.