ETHYL FALKINBURG, APPELLANT, v. INTER-STATE BUSINESS MEN'S ACCIDENT COMPANY, APPELLEE.

272 N. W. 924

FILED APRIL 30, 1937. No. 29945.

*Brome & Thomas* and *Harold A. Moore,* for appellant.

*J. W. Kinsinger, Brogan, Ellick & Shoemaker* and *Robert B. Hamer, contra.*

Heard before GOSS, C. J., ROSE, GOOD, DAY, PAINE and CARTER, JJ., and BLACKLEDGE, District Judge.

PAINE, J.

Plaintiff brought suit on an accident policy for the death of her husband. Defendant denied that the death was caused by an accident. The jury returned a verdict for the defendant, and upon the motion for a new trial being overruled, plaintiff appeals.

The assignment of error sets out that the verdict is contrary to the evidence and to the law, and that the court

erred in giving instruction No. 6, and that the court erred in overruling the plaintiff's objection to the testimony of David H. Brown respecting questions and answers given by the plaintiff at the taking of her deposition in another proceeding.

The petition alleged that on April 17, 1913, the plaintiff's husband took out a policy of insurance in the defendant company, which provided a payment of $5,000 if the insured came to his death from accidental injury, and the plaintiff was named as beneficiary therein; that on February 20, 1935, the plaintiff's husband was fatally injured by the discharge of a revolver, and died as a result of such injury eight days later, and plaintiff maintained that the discharge of the revolver was accidental, and brought suit for $5,000.

The defendant in its answer denied that the discharge of the revolver was accidental, and alleged that the policy of insurance provided that there would be no liability on the part of the defendant company if the bodily injury was produced by the discharge of firearms unless the accidental character of the injury should be established by the evidence of one eyewitness. The defendant also alleged that the policy provided that, if the insured should carry other insurance covering the same hazard without giving written notice to the company, said company would only be liable for proportionate amounts of the benefits, and charged that, without notice, the insured carried accident insurance in the Prudential Insurance Company of America in the sum of $3,600, and also a policy in the North American Accident Insurance Company in the sum of $7,500, and that the three policies of accident insurance in force at the time of his death were for a face amount of $16,100, but the court refused to admit over the plaintiff's objection evidence relating to the other accident insurance carried by the deceased, and also refused to submit to the jury that there could be no recovery if the death was caused by firearms unless there was an eyewitness to the accident.

The sole issue submitted to the jury by the trial court

was whether the discharge of the revolver was accidental, and the burden of proof was upon the plaintiff to prove that the discharge was accidental in character.

The evidence disclosed that for many years the deceased had been a Pullman conductor, and had made a satisfactory record; that he had lost practically no time in the service, but in July of 1934 he was compelled to stop work by illness, which was not physical but rather nervous in its nature; that he made at least two attempts to go back to work, but was unable to perform the work; that he had been under the care of two physicians, one of whom was somewhat of a specialist in mental diseases; that he drew some disability payments from a group insurance policy carried by the Pullman Company on its employees.

The plaintiff and her husband had lived together very happily during these years, and she was sympathetic to him in his disability. There was no mortgage on their home, and they had seven or eight hundred dollars in cash in the bank. The evidence disclosed that on the morning of the fatal shooting he had been out washing the windows on the outside of their home; and that he came into the house when his work was completed, and the plaintiff was working in the bathroom; that they visited for a few moments, then he walked through the dining-room and into a bedroom and had opened one of the upper drawers of a chiffonier in the bedroom and had taken from this drawer a 38-caliber Iver-Johnson revolver. The plaintiff rushed into the bedroom when she heard the explosion of the gun. Her husband was just falling to the floor, and said: "Toody, the gun went off." The plaintiff helped him get up on the bed and called for help, and neighbors came at once. He was taken to a hospital in the ambulance, and got along fairly well for a few days and then developed pneumonia and died eight days after the injury. The physician who examined him at the Immanuel Hospital after his arrival said that the bullet went in between the fifth and sixth ribs, a little over three inches to the left of the mid-line, and "just about the place where you can feel your heart beat," about

one inch below the nipple; that it came out between the tenth and eleventh ribs in the back.

An expert in firearms from Kansas City testified that he had examined and tested some 20,000 firearms, and had some 400 in his possession; that he had testified as an expert in 211 cases; that the Iver-Johnson revolver was the most common type of gun, and that he had tested an average of about 30 of them a month since 1927; that he had fired the gun introduced in the case at bar; that it is a double-action gun; that when the trigger is pulled a safety-block rises, and when the hammer is released by pulling the trigger further it hits the block, which in turn hits the firing-pin; that the hammer never strikes the firing-pin; that this model is known as "hammer the hammer," and is so advertised, and means that one can hit the hammer without discharging the gun; that he fired ammunition from this gun and made thorough tests of it. There was found in the gun a shell which had been discharged, and just ahead of it a shell which had misfired, and this expert said he found bright, untarnished spots in both of the primer caps at the place of indentation.

Another expert witness called by the defendant testified that he was ordnance officer and had formerly been stationed at Fort Omaha; that he had had charge, at the Frankfort arsenal and Springfield armory, of making tests with ammunition and guns, and had written two text-books for army use upon this subject; that he owned a gun of the same make as the one introduced in evidence; that it took a pressure of approximately seven pounds to discharge the hammer after it had been cocked, but that when the trigger was pulled in double action to pull back the hammer it required a pressure of approximately 15 pounds to discharge the gun; that the bottom of the indentation of both the discharged cartridge and the one that had misfired were bright, showing the recent exposure of the bright undersurface by the sharp blow of the firing-pin; that he examined these two shells on May 16, and again on July 8, 1935; that the first time that corrosion was noted on the

primer caps was on July 8, 1935, and that they were both corroded over.

At the time of the shooting the deceased was in his own bedroom, and as the plaintiff came into the room she first saw him falling to the floor, and the gun was falling to the floor at the same time.

The third assignment of error is that the court erred in giving instruction No. 6, which reads as follows: "You are instructed that the law presumes that the insured did not intentionally take his own life, and this presumption obtains until evidence is produced tending to show that the insured did in fact take his own life, and after considering all of the evidence, if you find from a preponderance of all of the evidence and the consideration of this presumption that the deceased, Orville G. Falkinburg, came to his death by the accidental discharge of the revolver, then your verdict will be in favor of the plaintiff, but, if you find that all of the evidence and this presumption against suicide as above set forth fails to prove by a preponderance of the evidence that the insured, Orville G. Falkinburg, died as a result of the accidental discharge of the revolver, then your verdict will be for the defendant." The first few lines of this instruction were taken practically verbatim from instruction No. 2 requested by the plaintiff.

Plaintiff insists that in the last part the court told the jury that this presumption has merely the force of proof, and thereby destroyed the entire purpose of the rule; that this is responsible for the confusion in the minds of the jury, and was prejudicial to the plaintiff. In the opinion of this court, this instruction was more favorable to the plaintiff than it should have been, in that it told the jury that both the evidence and the presumption should be considered by the jury.

In *Del Vecchio v. Bowers*, 296 U. S. 280, 80 L. Ed. 229, it is said in an opinion by Justice Roberts: "No rags or other material were discovered such as would suggest that Bowers was cleaning the pistol. * * * The parties agree that the

injury was self-inflicted, but are in controversy as to whether it was accidental or intentional. * * * The natural love of life, the comparative infrequency of suicide as contrasted with accident, * * * justify a presumption, which the law indulges in such a case, that the death was accidental. * * * Once the employer has carried his burden by offering testimony sufficient to justify a finding of suicide, the presumption falls out of the case. It never had and cannot acquire the attribute of evidence in the claimant's favor. Its only office is to control the result where there is an entire lack of competent evidence. If the employer alone adduces evidence which tends to support the theory of suicide, the case must be decided upon that evidence. * * * The court of appeals erred in holding that as the evidence on the issue of accident or suicide was, in its judgment, evenly balanced, the presumption must tip the scales in favor of accident." Other cases in support of this holding are: *Dodder v. Aetna Life Ins. Co.,* 104 Neb. 70, 175 N. W. 651; *Green v. New York Life Ins. Co.,* 192 Ia. 32, 182 N. W. 808; *Sawyer v. Mutual Benefit Health & Accident Ass'n,* 121 Neb. 504, 237 N. W. 615; *De Bruler v. City of Bayard,* 124 Neb. 566, 247 N. W. 347; *In re Hawkins v. Kronick Cleaning & Laundry Co.,* 157 Minn. 33, 195 N. W. 766, 36 A. L. R. 394.

The plaintiff alleges prejudicial error in admitting the testimony of the witness David H. Brown, over the objection of the plaintiff, as to testimony given by the plaintiff, Ethyl Falkinburg, in a deposition taken in an action pending between other parties, and to which the defendant was not a party. Mr. Brown was a notary public and shorthand reporter, who had in court his original notes taken by him of the evidence given by the plaintiff in a deposition on July 25, 1935, in which he was allowed, over the objection of the plaintiff, to testify that she did not hear her husband state how it happened that he was shot; that he did not tell in her presence, as she had gone to another room to get a blanket to put around him. Plaintiff insists that, as this deposition was taken in another case and at the instance

of another party, who is not a litigant in the case at bar, it was a glaring example of the misuse of this evidence, and cites 3 Wigmore, Evidence (2d ed.) sec. 1415, that, if a witness is available for testifying, his deposition may not be used, and section 20-1246, Comp. St. 1929, showing under what conditions a deposition may be used in court. It is the opinion of this court that this evidence so taken was admissible without the necessity of laying a foundation, for it was clearly an admission against interest upon a material matter, and was admissible against the plaintiff as original evidence. Two opinions of this court on this point are *Luikart v. Korbmaker*, 128 Neb. 199, 258 N. W. 263, and *Gentry v. Burge*, 129 Neb. 493, 261 N. W. 854, in which latter case the admissions had been made before a referee in bankruptcy, and in the opinion of this court the trial court was right in allowing the evidence to be read to the jury. The most recent opinion is *McDaniel v. Farlow, ante,* p. 273, 271 N. W. 905, which is squarely in point.

We have discussed the errors alleged by the plaintiff and have reached the conclusion that the rulings of the trial court on evidence and the instructions given the jury were in no wise prejudicial to the plaintiff, and that the evidence sustains the verdict returned. The judgment of the trial court is hereby

AFFIRMED.

CARTER, J., dissenting.

I cannot agree that the evidence of the witness David H. Brown was admissible as an admission against interest. His evidence was clearly of an impeaching character only and therefore not admissible until a proper foundation was laid for it.