SYLVIA R. HANNON, WIDOW OF THOMAS E. HANNON, DECEASED, APPELLEE, V. J. L. BRANDEIS & SONS, INC., APPELLANT.

181 N. W. 2d 253

Filed November 20, 1970. No. 37572.

Walsh, Walentine, Wolfe, Miles & Katskee, for appellant.

Thomas A. Walsh of Boland, Mullin & Walsh and Sam Klaver, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

This is an action by the widow of Thomas E. Hannon to recover benefits under the workmen's compensation law resulting from his death on December 6, 1968, while in the employ of the defendant. The trial court found for the plaintiff and defendant has appealed to this court.

On December 6, 1968, the deceased was employed by

J. L. Brandeis & Sons, Inc., at its steam plant as a maintenance engineer. He had been so employed for approximately 20 years and on the date of his death he was receiving approximately $130 per week as compensation. He worked 8 hours each day. His duties generally required 6 hours at the steam plant and approximately 2 hours at the store building where he performed maintenance work. He was at the store building on the day in question for the sole purpose of talking with the director of personnel at the direction of the defendant. He had received no call for maintenance assistance nor had he been directed to perform any such service. The evidence is that Hannon's physical condition had deteriorated to such an extent that he had been relieved of many of his former duties. He was afflicted with a disease which about 2 years before his death had been diagnosed as Huntington's chorea which is generally described as a chronic, convulsive nervous disease with involuntary and irregular jerking movements usually accompanied with irritability and depression. The disease had progressively worsened until Hannon's supervisory officers had concluded that he was to be retired for his own safety and the safety of others about him. His immediate supervisor, Elmer Guy, was directed to bring Hannon to the office of the personnel director, Graydon A. Landahl, who was to inform him that he was to be retired and the conditions of such retirement.

At about 1:30 p.m., on December 6, 1968, Guy accompanied Hannon to the 8th floor of defendant's downtown department store where the personnel office was located. He introduced Hannon to Landahl and returned to his work.

Landahl testified that he visited with Hannon, informed him that he was to be retired, and told him that his social security was to be augmented by the defendant so that he would get the equivalent of his present pay until he was eligible for full social security benefits. He testified also that Hannon became emotionally dis-

traught and and asked to sit in the office for awhile which he did. He said to Landahl many times: " 'I don't know what I am going to do.',", and " 'There has been trouble, trouble, trouble. Now, what am I going to do?' "

The assistant to the personnel officer testified she left when Guy and Hannon came in. She came up in the elevator later from the 1st floor. It stopped at the 7th floor and Hannon entered and got off on the 8th floor. A few minutes later it was reported to the personnel office that Hannon had fallen to his death.

The evidence shows that the 8th floor, other than the personnel office, was constructed for the parking of automobiles. The car-park was enclosed with a 3-foot wall which one must clear to fall to the ground. It cannot be questioned that Hannon fell from the upper part of the building. A witness who stopped at a stop light in the street saw Hannon falling past the upper floors and sustains the contention that he fell from the parking area of the building.

The workmen's compensation law provides that to recover benefits under the act, a plaintiff must establish by a preponderance of the evidence that the injury or death was sustained by the employee by an accident arising out of and in the course of his employment. In other words, a claimant must establish that the injury occurred within the time and place limits of the employment and that the injury was incidental to or caused by the employment. Oline v. Nebraska Nat. Gas Co., 177 Neb. 851, 131 N. W. 2d 410.

This case may properly be described as an unexplained death case. There was no witness as to the manner of Hannon's fall from the car ramp. The plaintiff relies on the rule that where a violent death is shown under circumstances indicating that death took place within the time and place limits of the employment, in the absence of any evidence as to cause of death, there is a presumption that the death arose out of the employ-

ment. Such a rule, in effect, holds that in such a case the presumption against suicide is sufficient to sustain an award of benefits under the workmen's compensation law. This rule is stated in 1 Larson, Workmen's Compensation Law, § 10.32, p. 108. Many cases from many jurisdictions supporting this view are collected in note 49 to the cited rule in the text. No cases are cited therein from this jurisdiction. It will be observed that section 48-151, R. R. S. 1943, states in part: "(2) * * * The claimant shall have a burden of proof to establish by a preponderance of the evidence that such unexpected or unforeseen injury was in fact caused by the employment. There shall be no presumption from the mere occurrence of such unexpected or unforeseen injury that the injury was in fact caused by the employment. * * * (7) For the purpose of this act, willful negligence shall consist of (a) deliberate act, (b) such conduct as evidences reckless indifference to safety, * * *."

An employee who is willfully negligent cannot recover under the workmen's compensation law. § 48-101, R. R. S. 1943. An employee who commits suicide is willfully negligent within the meaning of the act. Under the Nebraska workmens' compensation law, the burden of proof is on the plaintiff to establish that the injury or death arose out of and in the course of the employment and there is no presumption from the mere occurrence of an unexpected or unforeseen injury or death that it was in fact caused by the employment.

Plaintiff asserts that where a violent death is shown, it will be presumed that such death was due to accident and that the injuries were not self-inflicted. The crux of this case is whether or not the defendant has produced sufficient proof to indicate suicide to overcome the presumption that the injuries suffered by Hannon were not self-inflicted, or, in other words, has plaintiff carried the burden of proof.

It is a general rule that where a cause of death is in issue and there is nothing to show how death was

caused, there is a negative presumption against suicide. The presumption against suicide is one of law and not of fact. It is based upon the natural characteristic of persons for love of life and fear of death. The presumption does not continue or possess probative force after the introduction of evidence tending to show how death occurred. The presumption should never be weighed as evidence and it disappears when circumstances are adduced showing how the death occurred and the trier of fact passes upon the issues in the usual way. In such case, the issue is to be decided, not by a presumption of law, but by inferences reasonably drawn from established facts. 29 Am. Jur. 2d, Evidence, §§ 217, 219, pp. 268, 269.

In Hawkins v. Kronick Cleaning & Laundry Co., 157 Minn. 33, 195 N. W. 766, 36 A. L. R. 394, it is said: "It is clear, therefore, that, in the presence of proof contra, there is nothing conclusive or even dominating about the presumption against self-destruction. All authorities agree that it is one of fact and therefore disputable. Being that, and nothing more, a mere inference or deduction adopted by the law of evidence, 'as a self-evident result of human reason and experience,' it controls decision only in the absence of opposing proof. It is persuasive; it is a cogent inference, strong argument, and nothing more. It does not take the place of facts proven nor does it remove from the field of judicial consideration any such facts. It is simply a deduction from experience and the knowledge we possess concerning ourselves and our tendency to cling to life rather than to destroy it. Such a deduction does not, we repeat, take the place of facts. On the contrary, it is applied to facts. Given only the fact of death, the presumption against suicide is controlling. But, given in addition to the death, circumstances indicating suicide, it is for the trier of the facts to weigh such circumstances, not only as against contrary proof, but also as against

the presumption or inference or deduction, whatever it may be termed, against suicide."

In Bohmont v. Moore, 138 Neb. 784, 295 N. W. 419, 133 A. L. R. 270, in dealing with the question of presumptions, this court said: "The better reasoned authorities hold that a presumption is not evidence of a fact, but purely a conclusion, having no probative force, and designed only to sustain the burden of proof until evidence is introduced tending to overcome it. '* * * When evidence is introduced rebutting the presumption, the presumption disappears, leaving in evidence the basic facts which are to be weighed.'" See, also, In re Estate of Goist, 146 Neb. 1, 18 N. W. 2d 513; In re Estate of Kajewski, 134 Neb. 485, 279 N. W. 185.

There being some proof tending to show that death was the result of suicide, the case stood for decision by the trier of facts upon the evidence adduced unaffected by the presumption against suicide since it is not evidence and could not be given weight as such. Since this is a trial de novo in this court, it is for this court to consider the evidence and draw the natural and logical inferences from the facts. New York Life Ins. Co. v. Gamer, 303 U. S. 161, 58 S. Ct. 500, 82 L. Ed. 726, 114 A. L. R. 1218.

No one saw how Hannon fell to his death, but this fact is not fatal to a finding of how it occurred. It is true, as heretofore stated, that if there is no evidence other than death itself, the presumption against self-destruction is sufficient to sustain a prima facie case. But where there is other evidence, the presumption disappears and the case proceeds as in other cases.

There is no material evidence in this case pointing toward death resulting from an accident arising out of and in the course of the employment. With the disappearance of the presumption against self-inflicted injury, we must determine if the inferences from the facts established reasonably point toward accidental injury or suicide.

The facts testified to in this case are as follows: The deceased was afflicted with Huntington's chorea, a serious disease which had become progressively worse. The defendant determined that his condition had become such that retirement was necessary and directed deceased's supervisory officer to take him to the personnel director to make his retirement effective. There was no other reason for the deceased going from the steam plant to the Brandeis store on that day. He had not been called to perform maintenance in the Brandeis store, had not been directed to do so, and, in fact, there was no equipment in the parking area of the 8th floor that required maintenance within the scope of deceased's employment. After being informed of his retirement by the personnel director, deceased became very distraught as evidenced by the testimony of the personnel director and became very distressed and depressed by his retirement. He left the office and descended from the 8th floor. Shortly thereafter he returned to the 8th floor where he had no duty to perform for the defendant. Very shortly thereafter his fall and death occurred. In order to fall he had to clear a 3-foot rail or wall. His return to the 8th floor and his closeness to the rail or wall can be accounted for only as a place to bring about his self-destruction.

We think the only inference that can reasonably be deduced from these facts is that his fall was due to suicide. De Bruler v. City of Bayard, 124 Neb. 566, 247 N. W. 347, a case very similar in principle, supports the conclusion we have reached. There a night policeman was found dead within the hours of his employment and at a place where his duties took him. No one saw the accident. Deceased had a gun in his hand and its hammer rested on a discharged cartridge. A witness testified that he talked to deceased in the early morning before the body was found and deceased appeared nervous and restless. Another witness testified that he talked with deceased about money matters some 4 months pre-

viously and deceased said: " 'Well, there ain't much use of trying. I just as well end it all.' " We held this sufficient evidence to find that the deceased committed suicide.

We think that the only logical inference that can be drawn from the established facts is that Hannon met his death by suicide. The plaintiff therefore failed to sustain the burden of proof on the contention that Hannon's death was due to an accident arising out of and in the course of his employment. The judgment of the district court is therefore reversed and the cause of action dismissed.

REVERSED AND DISMISSED.

McCOWN, SPENCER, and SMITH, JJ., dissenting.

The thrust of the majority opinion here places the burden on the plaintiff in a workmen's compensation case to prove that a deceased employee did not commit suicide rather than placing the burden on the employer to establish the affirmative defense of willful negligence.

Section 48-102, R. R. S. 1943, provides that willful negligence (which includes suicide) is an affirmative defense available to the employer in a workmen's compensation case. Under such circumstances, the burden of proof rests on the employer to prove suicide rather than on the employee to prove the negative of that issue.

We cannot agree with the rejection of the rule followed by the great majority of states: "When an employee is found dead under circumstances indicating that death took place within the time and space limits of the employment, in the absence of any evidence of what caused the death, most courts will indulge a presumption or inference that the death arose out of the employment." See 1 Larson, Workmen's Compensation Law, § 10.32, p. 108.

The underlying justification for that rule is stated by Larson at page 111: "The theoretical justification is similar to that for *unexplained falls* and other neutral

harms: The occurrence of the death within the course of employment at least indicates that the employment brought deceased within range of the harm, and the cause of harm, being unknown, is neutral and not personal. The practical justification lies in the realization that, when the death itself has removed the only possible witness who could prove causal connection, fairness to the defendants suggest some softening of the rule requiring claimant to provide affirmative proof of each requisite element of compensability." (Emphasis supplied.) Section 48-151, R. R. S. 1943, does not prevent the adoption of the rule.

In this case, no one saw how Hannon's fall occurred, and no one knows how it occurred. Any conclusion as to whether it was intentional or accidental must rest on inference and speculation. The presumptions are all against suicide. When an employee is killed within the time and space limits of his employment by a fall which could only be accidental or suicidal, evidence that he might have had some plausible reason to commit suicide is not sufficient to overcome the presumption against suicide, much less carry the burden of proof that suicide was committed.

Three courts have previously reached that conclusion on the facts here. Their action should be affirmed.