Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/07/2017 09:08 AM CST

- 504 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
MICHAEL B. v. NORTHFIELD RETIREMENT COMMUNITIES
Cite as 24 Neb. App. 504

Michael B., as father and next friend of
KaLeigh B., appellant, v. Northfield
Retirement Communities, appellee.

___ N.W.2d ___

Filed February 7, 2017.    No. A-16-486.

1. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may only modify, reverse, or set aside a Workers' Compensation Court decision when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence.

3. **Death: Presumptions.** The presumption against suicide is one of law, not of fact, and is based upon the natural characteristics of persons for love of life and fear of death.

4. **Death: Presumptions: Evidence: Proof.** The presumption against suicide can be overcome and rebutted by the introduction of evidence tending to show how the death occurred.

5. ____: ____: ____: ____. If the presumption against suicide is overcome, the burden shifts to the party asserting the death was accidental to adduce evidence of such.

6. **Workers' Compensation: Negligence.** A claimant cannot recover under the workers' compensation law if the employee was willfully negligent.

7. ____: ____. Willful negligence consists of a deliberate act, conduct evidencing a reckless indifference to safety, or intoxication at the time of injury without consent, knowledge, or acquiescence of the employer.

- 505 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
MICHAEL B. v. NORTHFIELD RETIREMENT COMMUNITIES
Cite as 24 Neb. App. 504

8. **Workers' Compensation: Negligence: Death.** Committing suicide generally constitutes willful negligence within the meaning of Neb. Rev. Stat. § 48-151(7) (Reissue 2010) and thereby bars recovery under the workers' compensation law.

9. **Workers' Compensation: Negligence: Death: Evidence.** There is an exception to the rule that suicide constitutes willful negligence when the evidence shows that suicide was nonvoluntary.

10. ____: ____: ____: ____. There are factors that can override a person's free will, and scientific testimony to such can be admitted as evidence that the suicide was not willful, thereby allowing for workers' compensation recovery.

Appeal from the Workers' Compensation Court: Daniel R. Fridrich, Judge. Affirmed.

Michael W. Meister for appellant.

Gregory D. Worth, of McAnany, Van Cleave & Phillips, for appellee.

Moore, Chief Judge, and Riedmann and Bishop, Judges.

Riedmann, Judge.

## INTRODUCTION

Michael B., as father and next friend of KaLeigh B., appeals from an order from the Workers' Compensation Court denying survivor benefits, following the death of Kena B. Based on our review of the record, we affirm.

## BACKGROUND

Kena sustained an injury arising out of her employment with Northfield Retirement Communities in 2009. In 2012, a stipulated award was entered in her favor. At the time, she continued to receive treatment. Kena passed away on April 15, 2014, from an apparent drug overdose. After performing an autopsy, the coroner found her cause of death to be multiple drug toxicity.

Following Kena's death, a suggestion of death, motion to substitute party, and petition for benefits was filed. The

- 506 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
24 NEBRASKA APPELLATE REPORTS
MICHAEL B. v. NORTHFIELD RETIREMENT COMMUNITIES
Cite as 24 Neb. App. 504

motion sought leave to substitute Michael as the plaintiff. The motion was granted, and Michael was allowed to file an amended petition on KaLeigh's behalf seeking death benefits under the Nebraska Workers' Compensation Act. Northfield Retirement Communities contested the amended petition, and the issue was tried to the court. The evidence reveals the following:

Several hours prior to Kena's death, Det. Henry Moreno of the Gering Police Department accompanied a social worker to Kena's residence at the social worker's request. At the time, Kena and her teenage daughter, KaLeigh, were living at a friend's house. The purpose of the visit was to speak with Kena regarding her drug usage and living situation, as well as to investigate a complaint regarding physical abuse of KaLeigh.

While at the residence, the friend asked Moreno to tell Kena that she was no longer welcome there. The social worker also spoke with Kena about housing options for KaLeigh, because KaLeigh was going to be removed from her custody. Kena was upset to learn that she was being evicted and that her daughter was going to be taken from her. At one point, Kena told the social worker that she was going to take a Xanax because "her anxiety was acting up."

During their conversations, Kena said that she had no family in the area to help her and that she did not know what she was going to do. She repeated several times that she was "at her end." When asked to elaborate on what she meant, she would not do so. The social worker specifically asked her if she was going to harm herself or anyone else, and she said no.

Moreno and the social worker left the residence at 3:54 p.m. after telling Kena to begin packing up her belongings to leave the residence. Moreno stated that he did not feel that Kena was a danger to herself at the time that they left.

Less than an hour later, at 4:51 p.m., a rescue call to the same residence was received. Upon Moreno's arrival, he saw that Kena was unconscious and that emergency personnel were

- 507 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
24 NEBRASKA APPELLATE REPORTS
MICHAEL B. v. NORTHFIELD RETIREMENT COMMUNITIES
Cite as 24 Neb. App. 504

administering CPR. While at the residence, he collected the pill bottles found in Kena's bedroom and later counted the quantity of some of the more "serious" pills.

Kena was taken to the hospital where she later died. At the hospital, the primary diagnosis was found to be an intentional drug overdose. When her autopsy was performed the following day, however, the coroner found that her death was accidental.

Prior to her death, Kena had been regularly seeing the same primary care doctor for a number of years, Dr. Michelle Cheloha. Dr. Cheloha testified that Kena had been experiencing pain from her work injury ever since it happened, even after she had surgery. Dr. Cheloha had prescribed various painkillers over the years to treat this pain. At the time of Kena's death, she had prescriptions for methadone and oxycodone to treat her continued neck pain. Dr. Cheloha also testified that Kena had a history of anxiety and depression that predated her work injury and that she had been on medications, such as Xanax, as far back as 2003. She also stated that she was aware Kena had prior suicidal ideations and attempts and that Kena had been admitted to the psychiatric unit on June 4, 2013, because she expressed that she felt hopeless and helpless and "want[ed] to leave the world."

Dr. Cheloha saw Kena 6 days prior to her death. The doctor confirmed which medications she had prescribed at that time and in what quantity. Of the 90 methadone pills she had prescribed, 78 should have remained, but Moreno found only 63. She prescribed 60 oxycodone pills, and 31 were left, and she prescribed 40 Xanax pills, and only 4 were found. Based on the quantities left over, Dr. Cheloha determined that Kena overdosed on all three medications and that the amount of medication unaccounted for would have been sufficient to send her into respiratory arrest and cause her death. She confirmed that the levels of medication found in Kena's body during her autopsy were in excess of what they should have been if she had taken them as prescribed and that, if taken at the correct

- 508 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
MICHAEL B. v. NORTHFIELD RETIREMENT COMMUNITIES
Cite as 24 Neb. App. 504

dosages, her medications would not have been expected to cause death. Dr. Cheloha also opined that Kena died due to the amount she took, rather than the combination. It was her belief that Xanax in particular caused Kena's death due to its "instantaneous" reaction time. She said that although she was aware of Kena's history using illicit drugs, she had never abused her prescriptions in the past.

The compensation court ruled in favor of Northfield Retirement Communities, finding that Kena's manner of death was suicide, which constituted willful negligence and thus barred any recovery of benefits. The compensation court subsequently dismissed Michael's petition with prejudice. He now appeals to this court.

## ASSIGNMENTS OF ERROR

Michael assigns, restated and reordered, that the trial court erred in (1) failing to apply the presumption against suicide; (2) finding sufficient competent evidence in the record to support a determination of suicide; and (3) improperly relying upon evidence which caused the court to exhibit bias, resulting in a denial of benefits.

## STANDARD OF REVIEW

[1,2] Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may only modify, reverse, or set aside a Workers' Compensation Court decision when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016). Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence. *Id.*

- 509 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
MICHAEL B. v. NORTHFIELD RETIREMENT COMMUNITIES
Cite as 24 Neb. App. 504

## ANALYSIS

*Presumption Against Suicide.*

Michael first assigns as error the trial court's failure to apply the presumption against suicide. He claims that there was not sufficient evidence of suicide to overcome the presumption and that the compensation court should have found Kena's cause of death to be accidental. For the reasons that follow, we disagree.

[3-5] In Nebraska, there is a general rule that where a cause of death is in issue and there is nothing to show how death was caused, there is a negative presumption against suicide. *Hannon v. J. L. Brandeis & Sons, Inc.*, 186 Neb. 122, 181 N.W.2d 253 (1970), *overruled on other grounds, Friedeman v. State*, 215 Neb. 413, 339 N.W.2d 67 (1983). The presumption against suicide is one of law, not of fact, and is based upon the natural characteristics of persons for love of life and fear of death. See *id.* However, this presumption can be overcome and rebutted by the introduction of evidence tending to show how the death occurred. See *Breckenridge v. Midlands Roofing Co.*, 222 Neb. 452, 384 N.W.2d 298 (1986). If overcome, the burden shifts to the party asserting the death was accidental to adduce evidence of such. See *id.*

The case at bar presented conflicting evidence as to whether Kena's overdose was accidental or intentional. In Michael's claim that Kena's death was accidental, he points to the facts that there were pills left that she did not take, that Moreno testified he did not feel Kena was a threat to herself, and that Dr. Cheloha testified only to Kena's suicidal ideations in the past. We also note that the results of the autopsy indicated that the manner of death was accidental. However, none of these facts are singularly dispositive.

The trial court found that Kena was in a "fragile emotional state" immediately prior to her death, having just been told that she was being evicted and that her daughter was going to be removed from her custody. Additionally, she repeated several times that afternoon that she was "at her end." We find

- 510 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
MICHAEL B. v. NORTHFIELD RETIREMENT COMMUNITIES
Cite as 24 Neb. App. 504

Kena's statement that she was "at her end" to be similar in nature to the statement made by the decedent in *De Bruler v. City of Bayard*, 124 Neb. 566, 247 N.W. 347 (1933). There, in response to his current financial difficulties, the decedent had been overheard saying, "'I just as well end it all.'" *Id.* at 568, 247 N.W. at 347. The court found that such statement, when considered with other factors, indicated that he had intentionally ended his life. *De Bruler v. City of Bayard, supra*. Here, we similarly find that Kena's statement indicated a sense of hopelessness and emotional instability, which supports a finding of suicide. We also note the short lapse in time between when Kena found out about her eviction and daughter's removal and when she overdosed.

The compensation court also took into consideration Kena's prior history of depression, as well as suicidal ideations and attempts, including a hospitalization for such less than a year prior to her death. The trial court also relied on the amount of medication, specifically Xanax, that Kena took on the day of her death. According to testimony from Kena's doctor, she prescribed 40 Xanax pills to Kena 6 days prior to her death, and only 4 were found. Her doctor also prescribed numerous pills of methadone and oxycodone. Her doctor testified that Kena had no history of abusing her medications and that Kena knew about the dangers of mixing medications because "she was a CNA."

Taking all of the above into consideration, we find no clear error in the trial court's determination that there was evidence tending to show how the death occurred, thereby overcoming the presumption against suicide.

*Sufficient Evidence to Support*
*Finding of Suicide.*

Michael next asserts that the trial court erred in finding sufficient competent evidence to determine that Kena committed suicide. He argues that the evidence indicated that her death was accidental, thus demonstrating no willful negligence

- 511 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
MICHAEL B. v. NORTHFIELD RETIREMENT COMMUNITIES
Cite as 24 Neb. App. 504

and allowing recovery of benefits. In the alternative, Michael claims that even if the overdose was intentional, Kena's work injury contributed to her suicide and was therefore compensable. We disagree.

[6-8] Under Neb. Rev. Stat. § 48-101 (Reissue 2010), a claimant cannot recover under the workers' compensation law if the employee was willfully negligent. See *Hannon v. J. L. Brandeis & Sons, Inc.*, 186 Neb. 122, 181 N.W.2d 253 (1970), *overruled on other grounds, Friedeman v. State*, 215 Neb. 413, 339 N.W.2d 67 (1983). Willful negligence consists of a deliberate act, conduct evidencing a reckless indifference to safety, or intoxication at the time of injury without consent, knowledge, or acquiescence of the employer. See Neb. Rev. Stat. § 48-151(7) (Reissue 2010). Committing suicide generally constitutes willful negligence within the meaning of this language and thereby bars recovery under the workers' compensation law. See *Hannon v. J. L. Brandeis & Sons, Inc., supra.*

[9,10] However, Nebraska law has recognized an exception to the rule that suicide constitutes willful negligence when the evidence shows that suicide was nonvoluntary. See *Friedeman v. State, supra*. In *Friedeman*, the decedent suffered a work injury that left her with chronic pain, making it very difficult for her to engage in any of her preaccident activities, such as working, helping on the family farm, and looking after her family. She had difficulty moving around and getting to sleep and became "a mere shadow of her former self." *Id.* at 415, 339 N.W.2d at 70. Several years after the accident, decedent committed suicide, leaving behind a note explaining that she "'just [could not] stand the pain any longer.'" *Id.* Her doctor later expressed the opinion that the pain from her work injury, rather than depression, drove her to commit suicide and that her decision to do so was nonvoluntary and beyond her control. *Friedeman v. State, supra*. The Nebraska Supreme Court agreed, acknowledging that there are factors which can override a person's free will and that scientific testimony to

- 512 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
MICHAEL B. v. NORTHFIELD RETIREMENT COMMUNITIES
Cite as 24 Neb. App. 504

such can be admitted as evidence the suicide was not willful, thereby allowing for recovery. *Id.* In so ruling, the Supreme Court carved out an exception from the general rule of *Hannon*, finding that a nonvoluntary suicide does not constitute willful negligence. See *Friedeman v. State, supra*.

For the reasons explained above, we find that the compensation court did not clearly err in finding that Kena's overdose was intentional. Specifically, we note Kena's fragile emotional state, her history of depression and anxiety, her history of suicidal ideations and attempts, and the amount of prescription medication that was unaccounted for and presumably taken by her on the day of her death. While there is no one dispositive factor, such as a suicide note, we find that the record overall does support the trial court's finding.

Michael alternatively asserts that even if Kena's death was intentional, recovery should still be allowed under the *Friedeman* exception because her work injury contributed to her suicide.

However, the trial court did not find that Kena's pain was a contributing factor in her death. Instead, the trial court focused on factors such as her emotional state and prior history. It found no evidence that extreme pain caused Kena to involuntarily end her life. While Dr. Cheloha testified that her pain *may* have exacerbated her anxiety and depression, both were preexisting conditions at the time of the work injury and neither was included in the stipulated award as an injury arising from the work accident. We find that this determination was supported by the record and was not made in error. Accordingly, we find no merit in this assignment of error.

*Improper Reliance on Evidence Resulting
in Bias Against Kena.*

Michael argues that the trial court improperly relied upon evidence of Kena's prior history of illicit drug use, which caused it to exhibit bias against her and resulted in a denial of benefits. We disagree.

- 513 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
MICHAEL B. v. NORTHFIELD RETIREMENT COMMUNITIES
Cite as 24 Neb. App. 504

Michael claims that the compensation court referred to Kena's illicit drug use "17 times in [its] Order for Dismissal," brief for appellant at 10, evidencing the fact that it improperly relied on such. We find the compensation court primarily referred to her illicit drug use in recounting the facts presented at trial. The only time her drug use was mentioned in the court's findings was to specifically explain that such evidence "played virtually no role" in its decision. The only manner in which the court considered Kena's drug use was in reference to medical records showing that she was hospitalized 2 months prior to her death for renal failure due to methamphetamine use. The court noted that if she was willing to abuse methamphetamine to the point of renal failure, such could indicate that she was willing to overdose on prescription medication to the point of death. Beyond that, the court explicitly stated that it did not rely on any evidence of Kena's illicit drug use.

Furthermore, we find no indication that the compensation court implicitly relied on such evidence. The court laid out each factor it relied upon in making its determination, and we find that those factors provided sufficient grounds to support the finding of suicide. We also note that Michael does not assign as error the admission of any exhibits referencing Kena's illicit drug use. In the absence of any evidence that the compensation court relied on evidence of Kena's drug use, we find that it did not exhibit bias against Kena.

## CONCLUSION

Following our review of the record, we determine that the compensation court did not err in failing to apply the presumption against suicide and in finding sufficient evidence to determine that Kena's overdose was intentional. We also determine that the compensation court did not improperly rely on evidence of illicit drug use resulting in bias. We therefore affirm the order of dismissal.

Affirmed.