VEEK *v.* WESLEY FREIGHT CO.

1. WORKMEN'S COMPENSATION—LEG INJURY—NOTICE—FINDING OF DEPARTMENT.

Findings of department of labor and industry that plaintiff had sustained an accidental injury to his leg and that his employer had timely notice thereof are accepted by Supreme Court under evidence adduced notwithstanding claim to the contrary by defendant employer and its insurer.

2. SAME—EXPERT WITNESS—PATHOLOGIST—SLIDES—DEPOSITIONS.

Testimony of expert witness who had not treated plaintiff but who had qualified as a pathologist was properly excluded where slides, containing specimens taken from tumors which were claimed to have grown upon plaintiff prior to injury for which workmen's compensation was sought and upon which such witness based his opinion, were not introduced in evidence and no deposition taken from doctor who is claimed to have furnished the expert with information relative to plaintiff.

3. SAME—APPEAL AND ERROR—QUESTIONS REVIEWABLE—AMOUNT OF AWARD.

Correctness of amount of award, modified by department of labor and industry upon appeal from its deputy commissioner, is not discussed on appeal where award made is vacated.

4. SAME—LEG INJURY—PREVIOUS CONDITION—MALIGNANT TUMOR —EVIDENCE.

In proceeding to recover workmen's compensation for injury to leg alleged to have necessitated its amputation above the knee, testimony as to condition of leg prior to the injury was improperly excluded on cross-examination where it tended to show presence of a malignant tumor since such testimony was material.

5. SAME—BURDEN OF PROOF—EVIDENCE.

In proceeding to recover workmen's compensation the burden of proof is upon plaintiff and the Supreme Court does not al-

ways insist upon the observance of some of the stricter rules of evidence at hearings before the department of labor and industry.

6. SAME—AMPUTATION OF LEG—CANCER—PROXIMATE CAUSE—EVIDENCE.

Award of compensation by department of labor and industry for amputation of leg injured accidentally by plaintiff while working is set aside and case remanded where it appears amputation was necessitated because of cancer, testimony was in conflict as to whether or not a single trauma could cause a cancer, and testimony as to previous condition of leg had been improperly excluded.

Appeal from Department of Labor and Industry. Submitted August 13, 1943. (Docket No. 103, Calendar No. 42,430.) Decided October 11, 1943.

Wilbert W. Veek presented his claim for compensation against Wesley Freight Company, employer, and Employers Mutual Liability Insurance Company, insurer, for loss of leg. Award to plaintiff. Defendants appeal. Award vacated and case remanded.

*Michael J. Anuta,* for plaintiff.

*Ray Derham,* for defendants.

BUTZEL, J. Wilbert W. Veek, plaintiff, 38 years of age, entered the employment of the Wesley Freight Company at its Menominee, Michigan, warehouse, in September, 1939. He claims that at about 2:30 p.m. on January 1, 1941, while unloading freight from a truck backed up to a platform and while carrying a heavy heater from the truck, he stepped on a steel plate connecting the truck with the platform, slipped on some oil and fell on his left knee; that he could not rise after the fall and

the foreman and another employee picked him up and rubbed his knee; that he rested for a short time and then worked until 5 o'clock checking freight instead of handling it; that he usually worked longer; that he reported the accident to the office the next day, but stated he needed no doctor; that the part of the knee on which he fell turned black and blue within 10 or 15 minutes after the accident and it continued to be sore and swollen for four or five months; that he continued to work until May, 1941, when he stopped for a few weeks in order to take treatment from a chiropractor. He also went to Madison, Wisconsin, in March, 1941, to see a doctor but the doctor was not there. He then went again on June 4, 1941, and on his return the following day, he informed his employer that he required hospitalization and an operation. On June 14, 1941, two days after a biopsy was made showing an osteogenic sarcoma at the head of the tibia, plaintiff's left leg was amputated at mid-thigh. Defendant freight company and its insurer denied that there was an accident or that the employer had timely notice of it but we accept the findings of the department in that regard.

In 1933, or thereabouts, plaintiff injured the ligaments of his knee while bowling. Later he bumped the knee in the same place when his foot slipped off the running board of a car. In October, 1934, he consulted Dr. H. W. Wirka at the Madison General Hospital, Madison, Wisconsin. Plaintiff had a giant-celled benign tumor at the head of the tibia. The tumor was excised in 1934. From that time on plaintiff was examined two or three times a year. In 1937, Dr. Wirka advised him that he could return to work. In October, 1940, he was exhibited before a meeting of the physicians and surgeons. The testimony shows that if the tumor is fully excised, the

healing should be complete in two or at the most in five or six years.

Cancer is a disease that baffles the medical profession and frequently it requires medical experts with their necessarily meager knowledge to attempt to determine its cause or recurrence. Plaintiff called as a witness a Dr. Marcos Fernan-Nunez who qualified as a pathologist although he had little experience as a surgeon. He never treated plaintiff or saw him until he was called upon to act as an expert. He obtained his information from another doctor who sent him two slides which it was claimed were taken from the tumors of plaintiff. They consisted of two very thin slices of tissues removed from the tumors and then embedded in paraffin and placed on pieces of glass. The doctor based his opinion on an examination of these two slides, and also on what the doctor had written to him, as well as what he heard in the courtroom. One slide was made in 1934 and the other evidently at the time of the second operation. The 1934 slide presumably was made from a biopsy at that time. If the tumor was completely excised at that time, the 1934 slide would not show a later condition, testified to by the doctor who attended plaintiff in subsequent years. Objection was made to the testimony on the ground that the slides were not introduced at the hearing and that the witness was basing his testimony on what another doctor had told him. The deputy commissioner properly held that the testimony could not be considered unless the slides were introduced, and a deposition of the doctor who had written to the witness was obtained. The slides were never introduced nor the deposition taken. Plaintiff's counsel subsequently in writing withdrew the testimony of Dr. Fernan-Nunez, in answer to the deputy commissioner's inquiry as to when additional testimony or

depositions would be taken. This left the plaintiff without any medical testimony except as herein noted. The testimony was properly excluded. The deputy commissioner, however, granted compensation and the department affirmed the award but modified it as to amount. Plaintiff cross-appeals as to the amount but, in view of our decision, we need not discuss the correctness of the amount.

Plaintiff, however, claims that the exclusion of the testimony of his sole medical witness in no way affected the balance of the testimony to the effect that a single trauma may cause cancer and that a benign tumor never becomes malignant. He, however, could not testify as to the character of the tumor excised in 1934 as the slide was not introduced, and he never saw the tumor and had not observed plaintiff's knee during the years after the 1934 operation.

Dr. Wirka, who attended plaintiff in 1934 and subsequent years and who performed the amputation, was brought to the hearing by defendants at their expense, but plaintiff called him to testify as an adverse witness.* The deputy commissioner decided he was not an adverse witness. Plaintiff testified that Dr. Wirka was his doctor, and that he had asked him to testify in his behalf. The doctor testified that he assisted in the performance of the operation in 1934 for removal of a giant-celled benign tumor of the size of a large lemon at the head of the tibia. He examined plaintiff from year to year thereafter and from the X-ray that was taken in October, 1940, prior to the alleged accident, and introduced as an exhibit, he testified:

"That is an X-ray, AP and lateral views, upper three-fifths of the tibia and fibula and lower one-fifth of the femur. In the upper one-fifth of the

* See 3 Comp. Laws 1929, § 14220 (Stat. Ann. § 27.915).—RE-PORTER.

tibia there is an area of increased density in the posterior part of the bone with an area of rarefaction on the anterior surface plus another area of rarefaction on the posterior lip of the tibial articulation. There is irregularity of the joint outline, there being an enlargement of the lateral portion of the tibia table. The X-ray represents a lesion showing both increased rarefaction and areas of hypertraction of lime salts."

The doctor further testified that no single trauma had ever been proven to produce cancer or that it aggravated a benign tumor that had previously existed so as to cause it to become malignant; that when plaintiff came to him in 1941, he made no mention of any accident in January of that year. Another doctor testified that black and blue spots would not develop within 15 minutes after a trauma.

Plaintiff further testified on recross-examination that he consulted a Dr. Schroeder in 1934 when he was having trouble with his knee, that he brought suit against Dr. Schroeder on account of his treatment or lack of treatment of the knee, that he signed a bill of complaint. Plaintiff's attorney objected to this line of testimony. Although it was on cross-examination, the objection was sustained. Thereupon defendant's attorney stated after the ruling that he would offer proof that plaintiff in connection with the same knee trouble started suit against Dr. Schroeder and alleged in a sworn bill of complaint that Dr. Schroeder did not properly diagnose his condition, that he was suffering from a malignant tumor, that the doctor paid plaintiff $1,000 in settlement of the suit. Defendant's attorney offered to introduce proof of these charges. The deputy commissioner refused to permit any testimony along that line. Subsequently, defendant's attorney filed petition to take further testimony to show that the

bill of complaint against the doctor for malpractice stated that "plaintiff's leg had become almost useless and permanently crippled;" also, that plaintiff was examined in 1936 by two other doctors and the X-rays of plaintiff's knee were examined by still another doctor, all of which plaintiff had concealed at the hearing of the case. Defendant's petition to take additional testimony was denied. It was the duty of the department to ascertain all facts and as the testimony in regard to Dr. Schroeder only came out on cross-examination, defendants should have had sufficient time in which to show the facts. They were material.

The burden of proof was upon plaintiff. This court has been liberal in not rigidly insisting upon adherence to the stricter rules of evidence in hearings before the department of labor and industry. Almost the entire testimony of Dr. Fernan-Nunez became worthless as he was testifying in regard to slides about which he could not be cross-examined, and also in regard to what had been told him by another doctor and what he had heard during the taking of testimony before a deputy commissioner. Such testimony was withdrawn. He did, however, state that a single trauma could cause cancer and that a benign tumor does not become malignant. However, the tumor if benign no longer existed as it had been excised and the cancer appeared at the same situs from which the tumor had been removed in 1934. Plaintiff's own doctor who appeared as his witness, however, testified wholly in defendant's favor. He stated that a single trauma could not cause cancer and that plaintiff had not told him that he had suffered from a fall in 1941. He further showed that it was necessary to examine plaintiff each year after 1934, and that in 1940 he took an X-ray of plaintiff and that at the situs of the cancer

there was an increased density of the posterior part of the bone, increased rarefaction and other unfavorable symptoms. It is very possible that the department might have reached an entirely different conclusion if they had the testimony before them in regard to the malpractice suit brought against Dr. Schroeder and the testimony of the other physicians at the time. Defendants were entitled to bring out these facts.

For this reason, the award is vacated and the case remanded to the department to enable defendants to present the testimony indicated. Defendants will recover costs.

BOYLES, C. J., and CHANDLER, NORTH, STARR, WIEST, BUSHNELL, and SHARPE, JJ., concurred.