TRUMBLE v. MICHIGAN STATE POLICE.

1. WORKMEN'S COMPENSATION—PROXIMATE CAUSE—EVIDENCE.
   An applicant for compensation must in some manner, beyond mere speculation, establish that his disablement arose out of his employment, not merely that it was discovered while in the course of his employment (CL 1948, § 412.1).

2. SAME—BURDEN OF ESTABLISHING CLAIM FOR COMPENSATION.
   The burden of establishing a claim for compensation rests on those seeking the award.

3. SAME—INFERENCES—CONJECTURE OR SPECULATION.
   If an inference favorable to an applicant for workmen's compensation can only be arrived at by conjecture or speculation, or if there are two or more inferences equally consistent with the facts, arising out of the established facts, the applicant may not recover.

4. SAME—GUESS.
   In awarding workmen's compensation to a plaintiff, the workmen's compensation commission may not indulge in the assumption of a mere possibility in the nature of a guess as to whether plaintiff is entitled to compensation.

5. SAME—PROXIMATE CAUSE—CONSTRUCTION OF STATUTES.
   Under workmen's compensation act, the term "out of" refers to the origin, or cause of the accident, and the words "in the course of" to the time, place, and circumstances under which the accident occurred (CL 1948, § 412.1).

6. SAME—INDEMNITY FOR ACCIDENTS INCIDENT TO EMPLOYMENT—INSURANCE.
   While the workmen's compensation act is to be construed liberally to provide indemnity for accidents peculiarly in-

REFERENCES FOR POINTS IN HEADNOTES
[1, 5-7] 58 Am Jur, Workmen's Compensation, §§ 209-212.
[2] 58 Am Jur, Workmen's Compensation, § 437.
[3, 4] 58 Am Jur, Workmen's Compensation, §§ 450, 453.

cidental to employment, it is not intended to be health, accident and old age insurance and spread general protection over risks common to all and not arising out of and in the course of employment (CL 1948, § 412.1).

7. SAME—JANITOR—EYE INJURY—PROXIMATE CAUSE—EVIDENCE.
    Where janitor merely showed that during the course of his employment as janitor he discovered that something was wrong with his eye, that 3 days later an ulcer developed on the cornea of one of his eyes, he failed to sustain his burden of showing that he was entitled to workmen's compensation, since there is no showing that the injury to his eye arose out of his employment (CL 1948, § 412.1).

BUSHNELL, REID, and NORTH, JJ., dissenting.

Appeal from Workmen's Compensation Commission. Submitted April 7, 1949. (Docket No. 35, Calendar No. 44,286.) Decided June 29, 1949.

George Trumble presented his claim for compensation against Michigan State Police, employer, and State Accident Fund, insurer. Award to plaintiff. Defendants appeal. Reversed and remanded.

*Harry F. Briggs* (*Stanley Dodge,* of counsel), for defendants.

NORTH, J. (*dissenting*). Plaintiff was awarded compensation for the personal injury hereinafter noted at the rate of $20.77 per week for a short period while he was kept from his employment, and also $243 was awarded to his physician for medical treatment. Plaintiff's employer, Michigan State Police, and its insurer, State Accident Fund, have appealed. The sole question presented by appellants is:

"Did the plaintiff, George Trumble, meet the burden of proof that he received a personal injury arising out of and in the course of his employment with the defendant, the Michigan State Police?"

Plaintiff's injury was to his right eye, and appellants' contention is: "There is no showing that during the course of his employment a foreign body or anything else entered his right eye to cause it to bother him." The issue presented necessitates a review of the rather brief testimony in this case. We shall refer to the Michigan State Police as the defendant.

Plaintiff was employed by defendant in the capacity of a caretaker or janitor in one of the State police buildings. His work consisted of cleaning, dusting, picking up papers, mopping, cleaning washstands and toilets, and washing windows. His day's work began at 4 a.m. On October 3, 1947, plaintiff began work at the usual time, and about 6:30 or 7 o'clock that morning his right eye began bothering him. As to the condition of his eye, plaintiff's testimony was:

"It was all right when I went to work. * * * 6 or 7 o'clock I noticed my eye smarting and bothering me. And that night, when I got home, it was just as red as blood, pretty near. * * * Well, it must have been done that morning,—it must have happened that morning. * * *

"Q. Now, when you came to Mr. Chappell (plaintiff's foreman), what did you tell him?

"A. Well, I told him that I got something in my eye, and I says, 'I don't know what I am going to do with it. I got to get something to put in it,' or something like that."

This witness further testified that about 6 o'clock on the morning of the injury he looked in the glass and saw that his eye was getting bloodshot. Plaintiff wore glasses and on cross-examination he was asked:

"Q. You didn't get anything out of your eye, did you?

"*A.* Well, not unless it came out unbeknown to me, you know. * * *.

"*Q.* You are not sure, that you got anything in it, though, are you?

"*A.* Well, I don't know what happened to it. Something happened to it. Whether I got acid in it, or something flew in my eye, or what—I couldn't say for that. * * *

"*Q.* Did you feel a sudden stinging pain in the eye?

"*A.* Oh, no, it wasn't no pain that I know of—that is, like sticking a needle in it, or anything like that."

Relative to his having gone to first aid, plaintiff's testimony was:

"I just went in and asked him if he had any stuff to put in my eye; I says, 'I got something in there that is aching pretty bad,' I says, 'Won't you—ain't you got some liniment or something?' He says, 'No, we don't have nothing for that.' * * * Well, I told him I got something in my eye. I didn't tell him I thought so; I told him there was something in my eye. I wanted to know if he had something for it, and he says 'No, I can't do nothing for that.'"

At first aid plaintiff was told he would have to go to a doctor. Plaintiff testified he had never had a doctor for eye trouble before, that his eyes had given him no trouble prior October 3d, although he had been working at the same occupation since June prior to his injury. Plaintiff also testified: "Well, I can't be positive whether anything,—something splashed in my eye, or whether I got something on my finger, and whether I done that (indicating) or not."

Dr. W. C. Behen, an ophthalmologist, who on the third day after plaintiff's injury treated him, as a witness for plaintiff, testified that in giving the doctor the history of his injury plaintiff said "that he thought he had gotten some acid or other foreign body—he wasn't quite sure what he got in his eye."

As to the condition of plaintiff's right eye the doctor testified:

"(Plaintiff's) eye was quite inflamed; he·had a very bad ulcer (on the cornea) which could be of three days' duration,   *   *   *   and he had iritis, or an inflammation of the iris, which also could hook in with his history that he had gotten something into his eye three days before."

The doctor's further testimony in substance was to the following effect. An injury to or a small foreign body in the eye might cause an ulcer. In other words, when you find an ulcer of the eye you conclude there must have been some foreign body strike the eye—come in contact with the cornea. While it does not very often happen, an ulcer might possibly result from a systemic condition. Plaintiff's iritis was due to the ulcerated cornea. An ulcer may result from a foreign body entering the eye in any where from 1 to 3 or 4 days. It depends upon what was carried into the eye, how virulent it was, and the resistance of the patient, and what not. And the doctor when testifying stated that in view of the history of the case and the result of his examination he "felt" there was a "causal" relation resulting in plaintiff's eye condition; but this appears to have been on the assumption that "he (plaintiff) had gotten something in his eye 3 days before." The doctor, who treated plaintiff from October 6, 1947, to May 1, 1948, further testified that the scar tissue from the ulcer was across the area of vision in plaintiff's right eye; and that while there was no evidence of a cataract at the time plaintiff first came to the doctor for treatment, that in the meantime and at least 6 weeks prior to hearing (June 1, 1948) the doctor discovered a cataract was developing on plaintiff's right eye, and as a result of the condition of plain-

tiff's eye the vision was "put down 20/70, but it would dim out."

"*Q.* So that there is in motion now, a cataract forming?

"*A.* That is right.

"*Q.* And that in your opinion is a traumatic cataract, a result of this ulcer which you found on October 6th?

"*A.* Yes, sir.   *   *   *

"*Q.* You didn't remove any foreign body from his eye, did you?

"*A.* No, sir."

The only witness called by defendants was plaintiff's foreman, Marshall Chappell. He testified:

"*Q.* When did you first know that Mr. Trumble was claiming he had some trouble with his right eye?

"*A.* Well, I disagree with Mr. Trumble. I believe that it was the first morning (instead of the second day), inasmuch as on making the rounds—that is, on our morning check-up through the buildings, Mr. Trumble approached me and asked me to look in his eye. He said, 'I believe I have something in it.' And I lifted the lid, looked in it, and was unable to detect anything in the eye, and at that time I advised him to see a doctor, and he told me that if it wasn't feeling better, that he would do so, and he would not be in. And at that time the eye was red and inflamed. But I believe it was the first morning."

While plaintiff, who was not represented by an attorney, did not make a record which discloses in complete and exact detail just what did happen to him in the way of a personal injury that resulted in the eye condition, the following does appear and without contrary testimony: Plaintiff had not experienced eye trouble before he began his work on October 3, 1947, that while at a type of work incident to which some foreign substance might have gotten into his eye he experienced the eye trouble which

rapidly became serious, as hereinbefore noted.   The inference may fairly be drawn that plaintiff's injury arose out of and in the course of his employment, as was found both by the deputy and the commission on review.   The law applicable to the instant case is well stated in the prevailing opinion in *Ginsberg* v. *Burroughs Adding Machine Co.,* 204 Mich 130, 137:

"The burden of establishing a claim for compensation rests on those seeking the award.   They are not required to establish their case by positive, direct evidence; in many cases that would be impossible; they may prove their case by circumstantial evidence as other cases are established.   \* \* \*   It is the province of the board [commission] to draw the legitimate inferences from the established facts and to weigh the probabilities from such established facts.   \* \* \*   If an inference favorable to the applicant can only be arrived at by conjecture or speculation the applicant may not recover.   So if there are two or more inferences equally consistent with the facts, arising out of the established facts, the applicant must fail."

This present record brings plaintiff's case within the requirements of *McCoy* v. *Michigan Screw Co.,* 180 Mich 454 (LRA1916A 323, 5 NCCA 455), wherein we held:

"The burden of furnishing evidence from which the inference can be legitimately drawn that the injury arose 'out of and in the course of his employment' rests upon the claimant."

Under this record we would not be justified in setting aside the award for the reason assigned in doing so in *Riley* v. *Kohlenberg,* 316 Mich 144, from which we quote the following:

"In awarding compensation to a plaintiff, the department may not indulge in the assumption of a

mere possibility in the nature of a guess as to whether plaintiff is entitled to compensation. *Ginsberg* v. *Burroughs Adding Machine Co.*, 204 Mich 130, 137; *Marman* v. *Detroit Edison Co.*, 268 Mich 166."

The award entered by the commission should be affirmed, but without costs since appellee has not filed a brief.

BUSHNELL and REID, JJ., concurred with NORTH, J.

BOYLES, J. Plaintiff fails to establish that his disablement *arose out of* his employment. For that reason I do not concur in affirming the award.

Plaintiff was employed as a janitor at the State Police post in East Lansing. On October 3, 1947, at 4 o'clock in the morning he started his work as usual. His work was "to clean and dust and mop, clean the toilets, such as that—clean up the place generally." He testified that nothing "out of the way" happened to his eye after he went to work:

"*A.* Yes. I was all right. I didn't notice anything out of the way, and I don't know, about 6:30 or 7 o'clock, I noticed my eye beginning to bother me.

\* \* \*

"*A.* So I kind of touched it up that day, and rubbed it, maybe, a little bit, and the next day I came to work and I saw a fellow out in the outside, and he says, 'What's the matter with your eyes?'"

He continued to work until October 6th. His eye "kind of smarted," and grew worse. His work had been "to pick up the papers, and such as that," then he went around to sweep and dust, then "to clean the drinking fountains and the toilets, and such as that." There was no testimony that in cleaning the toilets he used any acid or caustic or other material which should be kept away from contact with the

eyes.   When asked about cleaning toilets, he testified:

"*Q.* Had you done any toilet cleaning that morning?

"*A.* Oh, yes, we have three—

"*Q.* I mean, had you done it before this started bothering your eye?

"*A.* Well, I don't think that morning, before I noticed it bothering me."

There is no question but that plaintiff first noticed that something was wrong with his eye, *during the course of* his employment.   There is an utter absence of any proof that the "very bad ulcer" on the cornea of his eye *arose out of* his employment.   His witness, the ophthalmologist who was allowed $243 by the award for medical fees, testified in substance that *if* plaintiff had gotten something into his eye, that *might* have caused the ulcer.   But there was no testimony that any foreign substance had gotten into plaintiff's eye while he was at work.   In fact, plaintiff's own testimony is to the contrary.   Plaintiff himself, when asked repeatedly whether anything "splashed" into his eye, whether any particular thing "happened" to his eye, would only say that "it just started to smart that morning," and when squarely asked whether he was sure he got anything in his eye, he said "Well, I don't know what happened to it." Furthermore, the building superintendent testified that on the morning of October 3d plaintiff approached him and asked him to look in plaintiff's eye, that he lifted the lid, looked in the eye, and "was unable to detect anything in the eye."   The ophthalmologist, who was plaintiff's witness, testified that "any injury to the eye might cause an ulcer," and that it might possibly come from a systemic condition.

An applicant for compensation must in some manner, beyond mere speculation, establish that his disablement arose out of his employment. Merely to show that it was discovered while in the course of his employment is not sufficient. This is fully supported by the cases from which Mr. Justice NORTH quotes as follows:

"The burden of establishing a claim for compensation rests on those seeking the award. * * * If an inference favorable to the applicant can only be arrived at by conjecture or speculation the applicant may not recover. So if there are two or more inferences equally consistent with the facts, arising out of the established facts, the applicant must fail." *Ginsberg* v. *Burroughs Adding Machine Co.,* 204 Mich 130, 137.

"The burden of furnishing evidence from which the inference can be legitimately drawn that the injury arose 'out of and in the course of his employment' rests upon the claimant." *McCoy* v. *Michigan Screw Co.,* 180 Mich 454 (LRA1916A, 323, 5 NCCA 455).

"In awarding compensation to a plaintiff, the department * may not indulge in the assumption of a mere possibility in the nature of a guess as to whether plaintiff is entitled to compensation. *Ginsberg* v. *Burroughs Adding Machine Co.,* 204 Mich 130, 137; *Marman* v. *Detroit Edison Co.,* 268 Mich 166." *Riley* v. *Kohlenberg,* 316 Mich 144.

Beginning with the enactment of the present workmen's compensation law in 1912, it has been consistently held that an injury, to be compensable, must "arise out of" as well as "in the course of" the employment. That was required by section 1 of part 2 of the act as originally passed in 1912. The same

---

* The powers and duties of the department of labor and industry, here referred to, are now vested in the workmen's compensation commission, see CL 1948, § 408.6 (Stat Ann 1947 Cum Supp § 17.6[6]).—REPORTER.

requirement remains unchanged through many subsequent amendments to the law.*

In *Rayner* v. *Sligh Furniture Co.,* 180 Mich 168 (LRA1916A 22, Ann Cas 1916A 386, 4 NCCA 851), concerning an accident which occurred about 2 months after the effective date of the act in 1912, this Court said:

"The words 'out of and in the course of the employment' are used conjunctively, not disjunctively; and upon ordinary principles of construction are not to be read as meaning 'out of,' that is to say, 'in the course of.' The former words must mean something different from the latter words. The workman must satisfy both the one and the other. The words 'out of' point, I think, to the origin or cause of the accident; the words 'in the course of' to the time, place, and circumstances under which the accident takes place."

In *Hills* v. *Blair,* 182 Mich 20 (7 NCCA 409), discussing an accidental death which occurred about 10 weeks after the effective date of the act, the Court said:

"Under the provisions of this act, only that employee is entitled to compensation who 'receives personal injuries arising out of and in the course of his employment.' It is to be borne in mind that the act does not provide insurance for the employed workman to compensate any other kind of accident or injury which may befall him. The language of the Michigan compensation law is adopted from the English and Scotch acts on the same subject, and, in harmony with their interpretations, has been construed by this Court, in *Rayner* v. *Sligh Furniture Co.,* 180 Mich 168 (LRA1916A 22, Ann Cas 1916A 386, 4 NCCA 851), as meaning that the words 'out

---

* PA 1912 (1st Ex Sess), No 10, pt 2, § 1, effective September 1, 1912, as amended (CL 1948, § 412.1 [Stat Ann 1947 Cum Supp § 17.151]).

of' refer to the origin, or cause of the accident, and the words 'in the course of' to the time, place, and circumstances under which it occurred."

In *Hopkins* v. *Michigan Sugar Co.,* 184 Mich 87 (LRA1916A 310), the Court (syllabus) held:

"To justify an award of compensation to an injured employee the accident must have arisen out of as well as in the course of his employment; the two are separate questions to be determined by different tests: 'Out of' points to the cause or source of the accident, while 'in the course of' relates to time, place, and circumstance."

The above statements have been repeated, in various ways, in many subsequent decisions of this Court. Recently Mr. Justice Bushnell, writing for the Court in *Appleford* v. *Kimmel,* 297 Mich 8, quoted with approval as follows:

"It is well settled that, to justify an award, the accident must have arisen 'out of' as well as 'in the course of' the employment, and the two are separate questions to be determined by different tests, for cases often arise where both requirements are not satisfied. An employee may suffer an accident while engaged at his work or in the course of his employment which in no sense is attributable to the nature of or risks involved in such employment, and therefore cannot be said to arise out of it. An accident arising out of an employment almost necessarily occurs in the course of it, but the converse does not follow. 1 Bradbury on Workmen's Compensation, p 398. 'Out of' points to the cause or source of the accident, while 'in the course of' relates to time, place, and circumstances. *Fitzgerald* v. *Clarke & Son,* 2 KB (1908) 796.

In *Simpson* v. *Lee & Cady,* 294 Mich 460, Mr. Justice Butzel, writing for the Court, said:

"The compensation law is to be construed liberally to provide indemnity for accidents peculiarly incidental to employment, but it was not intended to be health, accident and old age insurance and spread general protection over risks common to all and not arising out of and in the course of employment."

To uphold the award in this case, we must find in the record some evidence that the ulcer on the cornea of plaintiff's eye was caused by some foreign substance that got into the eye after 4 a.m. and before 6:30 or 7 a.m., on the morning of October 3, 1947, while plaintiff was at work for the defendant State Police. To establish his right to compensation, plaintiff must show something more than the mere fact of his employment during that time as a janitor and the discovery, during the course of his employment, that something was wrong with his eye, and 3 days later that an ulcer developed on the cornea of one of his eyes.

The case is remanded for entry of an order denying compensation.

SHARPE, C. J., and DETHMERS, BUTZEL, and CARR, JJ., concurred with BOYLES, J.