HOFFMAN v. STICKNEY.

1. AUTOMOBILES—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—SPEED.
   The matter of contributory negligence of plaintiff's decedent, an eastbound pedestrian who had reached center or perhaps the easterly portion of street approximately 35 feet wide when struck by defendant's southbound car traveling at an excessive rate of speed before daylight on a dark, cloudy December morning, was properly left to jury, where there is evidence from which it may be inferred that decedent had made proper observation as to approaching traffic, formed a judgment as to its distance away and speed, again observed traffic while crossing the street and had exercised that degree of care and caution which an ordinarily careful and prudent person would exercise, to reach a place of safety.

2. EVIDENCE—CONJECTURE—INFERENCES.
   A finding as to particular fact may be based upon inferences fairly drawn from other facts established by proof, although a verdict may not rest upon bare conjecture.

3. SAME—INFERENCES—PRESUMPTIONS.
   Reasonable inferences which may be drawn from affirmative facts proven are evidence, and not presumptions.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur, Automobiles §§ 705, 706.
[2, 3] 20 Am Jur, Evidence § 157 et seq., § 270 et seq.

4. DAMAGES—DEATH—HOSPITAL, MEDICAL AND FUNERAL EXPENSES—
SUPPORT OF WIDOW.

    Verdict of $5,000 in widow's action for death of 71-year-old
husband whose hospital, medical and funeral expenses were
$955.45, and who was her sole means of support *held*, within
the reasonable range of proofs, the final verdict allowing her
but $236.17 annually for food and clothing for duration of
8.07 years as his expectancy (CL 1948, §§ 691.581, 691.582).

Appeal from Ingham; Salmon (Marvin J.), J.
Submitted October 7, 1953. (Docket No. 18, Calendar No. 45,890.) Decided December 29, 1953.

Case by Mina E. Hoffman, administratrix of the
estate of Fred C. Hoffman, deceased, against Charles
C. Stickney, Sr., and Marie Stickney for damages
arising from accident causing death of plaintiff's
decedent. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Donald A. Jones* (*Frederick C. Newman*, of counsel), for plaintiff.

*Ballard, Jennings, Fraser & Parsons*, for defendants.

BOYLES, J.   Plaintiff's decedent, Fred C. Hoffman,
was struck and killed by an automobile owned by the
defendants and driven by defendant Charles, while
crossing North Larch street in Lansing. His surviving widow brought the instant suit[*] to recover medical, hospital and funeral expenses and for loss of
future support. On trial by jury plaintiff had verdict
for $5,000, and from the judgment entered thereon
the defendants appeal.

    Three grounds are urged for reversal. Two of
them may be considered together: Was the decedent

---

[*] See CL 1948, §§ 691.581, 691.582 (Stat Ann 1951 Cum Supp
§§ 27.711, 27.712).

guilty of contributory negligence as a matter of law, namely, did the court err in denying defendants' 2 motions for a directed verdict on that ground during trial, and in submitting that issue to the jury; also, did the court err in denying defendants' motions for a new trial and for judgment *non obstante veredicto,* based on the same ground?

The accident occurred before daylight on the morning of December 6, 1951, at a place where railroad tracks cross North Larch street in Lansing, near the plant of the Motor Wheel Corporation. It was a dark morning, cloudy, and it had been raining. The defendant Charles C. Stickney, with his headlights turned on, was driving south on Larch street. Plaintiff's decedent was struck by defendants' automobile while walking east on the railroad track, to get across Larch street.

The only disinterested eyewitness to the accident, Frank Judge, testified that he was driving his automobile south on Larch street and that when he was more than 200 feet away he saw the decedent enter into the traveled portion of the highway. At that time the defendant Charles C. Stickney was passing Judge's automobile on its left, and was straddling the center line of Larch street. Mr. Judge noticed that the decedent increased his speed in crossing the street, indicating having seen defendants' car passing the Judge car. Mr. Judge also testified that he was traveling at 35 miles per hour at the time the Stickney car passed him. The maximum legal speed at that place was 25 miles per hour. Judge testified:

"*A.* * * * As I proceeded south on North Larch street, I approached one of the Motor Wheel plants on my left side, on the east. * * * I saw a pedestrian as I went along on North Larch, directly across from the Motor Wheel plant. On North Larch on the side I was driving, there are 2 lanes but there were parked cars in the 1 lane. * * *

"*Q.* Now where were you, approximately, when you first observed the pedestrian in front of you, * * *

"*A.* * * * He was just past the parked cars. * * * The parked cars were occupying, as I have indicated, the other lane or the other side. When I first saw this pedestrian, he was just out in the street from the parked cars and down on the tracks, beyond the parked cars in the other lane. While I was traveling I saw another motor vehicle traveling south, there was one that passed me. * * *

"*Q.* How far north were you of the pedestrian at the time this automobile (the Stickney car) passed you?

"*A.* I will say about 200 feet.

"*Q.* What part of the highway did your vehicle occupy as you traveled south while this other automobile passed you? In other words, where were you in the street when the other automobile passed you?

"*A.* I was in the only other lane that was left to drive in. There is just the 2 lanes. In the outside lane—next to the centerline. I saw this car pass me. There is more than room for just 1 car in that lane, it is about a lane and a half I would imagine, and it was partially in the other lane and partially in the lane that I was driving in, the other lane being on the opposite side of the street across the centerline. After that car passed me I did not see the pedestrian again; I was looking for the pedestrian after he passed me.

"*Q.* After the first time you saw the pedestrian did you see him again before this automobile passed you?

"*A.* Yes, he was hurrying across the street before the car—just as the car was passing me. I was driving 35 miles per hour; this other automobile passed me while I was going 35 and continued on to the south. I thought that the pedestrian was going to get hit and I kept looking to where he was standing when the car blocked my view and I didn't see him standing there after the car went past where he was

standing, and I seen his dinner pail flying through the air. * * *

"*Q.* Where was the pedestrian when you last saw him before this other vehicle hit him?

"*A.* He was right in the center lane—right at the centerline. The vehicle was going down the centerline. After I saw the dinner pail flying in the air, I saw the car that passed me right up at Beaver street; that was south of the point where I saw the dinner pail fly in the air, I would say between 60 and 70 feet. This car that passed me stopped and I went down there. I saw this pedestrian in front of the car. He was right in front of the car, laying right down in front of it.

"*Q.* Did you observe the car that the pedestrian was lying in front of?

"*A.* Yes, sir.

"*Q.* Did you see any evidence of damage to the car?

"*A.* Yes, it was the left front fender and headlight. * * *

"*Q.* Are you able to state what part of the street this automobile was located in, Mr. Stickney was driving?

"*A.* It was in a cocked position. The rear of the car was by the centerline and the front of the car was pulled back into the lane that I was driving in. * * *

"*Q.* Are you able to point out on the drawing up there on the blackboard approximately where Mr. Hoffman was standing when you last saw him?

"*A.* Yes, sir, I believe so, he was standing right out in here.

"*Q.* Right at the centerline or possibly a little to the east?

"*A.* He may have been a foot or so on either side of it, but he was right about on the centerline.

"*Q.* I believe you testified that the Stickney car was astraddle of the centerline?

"*A.* Yes, sir. * * * At the time he passed, I was in the second lane. His vehicle was partially

in the lane that I was driving in and partially over the yellow line. There wasn't enough room there for us to pass. I don't know how fast he was traveling; I would say that he was traveling approximately 10 miles an hour faster than I because he passed me quite rapidly, he didn't pass me slowly. I was going 35."

The defendant driver testified that he had been driving 35 miles per hour, had reduced it to the legal limit of 25, that he had to move out toward the center line to pass cars parked at the west curb, that he did not cross the center line, that he did not see decedent before he (Stickney) reached the railroad tracks, that Mr. Hoffman

"appeared in front of my car about the time I was crossing the last pair of tracks on the south side of the crossing.

"*Q.* How far did he travel after you first saw him?

"*A.* Very short distance; probably not over 10 feet. It seemed as though I could reach out and touch him when my car struck him. Impact showed that the left front fender and headlight had received the brunt of the damage."

One of the Lansing police officers who answered the accident call and went to the scene of the accident testified that he saw the 1939 Chevrolet coupe (defendants' car) "sitting in the middle of the street with a person underneath the front end of it."

The other city police officer who also answered the call testified:

"When I got to the scene in the vicinity of Beaver and North Larch streets I saw a 1939 Chevrolet in the middle of the street, on Larch street. * * * The Chevrolet automobile was approximately in the center of the intersection on Beaver street, slightly to the south, and would be on the centerline of Larch street. * * * From what I observed, there were no tracks on the wet pavement to indicate the route

of the car at the time that I arrived. There was nothing to indicate to me that the car was on the west half of the street before the collision."

Considering the testimony in the light most favorable to the plaintiff, when the decedent passed the automobiles parked at the west curb of Larch street to go across the street to the east, the Judge car was about 200 feet distant. Decedent had about 17 or 18 feet to go, to reach the center. He started to walk faster when the defendants' car had passed the Judge car. He had reached a place of apparent safety, either at the center of Larch street or east of the center, when he was struck by the left headlight and fender of defendants' automobile traveling south on the center line at an excessive rate of speed. It was reasonable for the jury to conclude that deceased had made a proper observation as to the approaching traffic and formed a judgment as to its distance away and speed, again observed traffic while crossing the street, and had exercised that degree of care and caution which an ordinarily careful and prudent person would exercise, to reach a place of safety. *Malone* v. *Vining,* 313 Mich 315. See, also, *Lang* v. *Ginste,* 333 Mich 108, where under similar circumstances it was held that where a pedestrian who was crossing a street had reached the streetcar tracks at the center of the street, in a place of apparent safety, and was hit by a taxicab that had turned out onto the tracks from behind another vehicle, he would not be held guilty of contributory negligence as a matter of law, but that his contributory negligence was a jury question.

Appellants claim that the trial court erred in denying their motion for judgment *non obstante veredicto*. In a short opinion denying the motion the trial court briefly reviewed the testimony and concluded that the decedent had made proper observation, may

have been struck after he had reached a point east of the center line of Larch street. Appellants argue that the court improperly based an inference upon an inference of no probative value. We do not agree.

"While a verdict may not rest upon bare conjecture, a finding as to a particular fact may be based upon inferences fairly drawn from other facts established by proof.   *   *   *

"Reasonable inferences which may be drawn from affirmative facts proven are evidence, and not presumptions." *Butrick* v. *Snyder* (*syllabi*), 236 Mich 300.

Finally, appellants claim that the verdict was excessive, not supported by the proofs, and that the court erred in denying their motion for a new trial on that ground.

It was admitted that plaintiff's life expectancy was more than that of the decedent and that according to the tables she would survive him. It was stipulated that decedent's life expectancy was 10.67 years.* Appellants claim that there was no testimony as to the amount contributed by the decedent to plaintiff's support. It is not borne out by the record. The testimony showed that the hospital, medical and funeral expenses were $955.45; that the aggregate annual amount paid by decedent for the expenses of their home, for taxes, coal, electricity, automobile maintenance, insurance, doctor bills, telephone, was $550. The court correctly charged the jury as to the proper method for determining the present worth of such expenditures. The aggregate total including the amount paid for medical, hospital and funeral expenses is $4,763.83, after allowing from their verdict $2,790.26, the amount which the court charged the jury to deduct for the amount paid to

---

* The record does not show why the court charged that his expectancy was 8.07 years, unless it was computed on a showing that his age was 71 years in 1951.

plaintiff by an insurance company at her husband's death, decedent having deferred his retirement from his employment beyond his normal retirement age. This was not a payment by decedent or from decedent's estate. The testimony was not disputed that the decedent was plaintiff's sole means of support, that he paid all expenses and provided her with food and clothing. The final verdict allowed plaintiff $236.17 annually for food and clothing for 8.07 years as decedent's expectancy. The undisputed evidence that the decedent was plaintiff's sole means of support was sufficient to establish the fact that he provided her with food and clothing. The amount allowed by the verdict was within the reasonable range of the proofs. Appellants rely on *McGrain* v. *Bell,* 248 Mich 523, to support their claim that there was no basis in the proofs to support the verdict in that regard. The facts in that case distinguish it from the facts in the instant case, as an authority.

Affirmed.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, SHARPE, and REID, JJ., concurred.