ZYTKEWICK v. FORD MOTOR COMPANY.

1. WORKMEN'S COMPENSATION—DEATH—PRESUMPTION—INFERENCES —CYANIDE POISONING—EVIDENCE.

The absence of evidence to rebut the presumption against suicide or death of plaintiff's decedent by criminal action leaves the remaining possible cause of death as that of accidental ingestion of cyanide, where evidence presented in widow's proceeding to recover workmen's compensation showed there was no cyanide around the home where decedent died from cyanide poisoning, that when he left for work he was healthy and normal, that cyanide was used in the factory as close as 50 feet from decedent's work location and also in a department through which he passed en route home, that cyanide was stored in the area around the drinking fountain near where decedent worked, that stock boxes which had contained cyanide were used in shipping material into decedent's department and about the building, that he appeared unwell when he left the car in which he had ridden part way home and that a small amount of cyanide was sufficient to cause death.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 9] 58 Am Jur, Workmen's Compensation § 450.
[2] 58 Am Jur, Workmen's Compensation § 433.
[3] 58 Am Jur, Workmen's Compensation §§ 436, 437.
[4] 58 Am Jur, Workmen's Compensation § 530.
[5] 58 Am Jur, Workmen's Compensation § 535.
[6] 20 Am Jur, Evidence §§ 159–162.
[7] 20 Am Jur, Evidence § 97.
[8] 17 Am Jur, Drugs and Druggists § 4.

2. SAME—INFERENCES—GUESS.

The workmen's compensation commission may draw reasonable inferences from established facts and circumstances, but may not indulge in the assumption of a possibility based on a possibility and a consequent guess.

3. SAME—DEATH—INFERENCES—ARISING OUT OF AND IN COURSE OF EMPLOYMENT.

The proper and permissible scope of an inference from established facts in a proceeding to recover workmen's compensation is not limited to the establishment that the cause of an employee's death was accidental but may include the establishment of the fact that the injury arose out of and in the course of the employment.

4. SAME—FINDING OF COMMISSION—SCOPE OF REVIEW.

The scope of review in workmen's compensation cases is limited to a determination of whether there is competent evidence to support the finding of the workmen's compensation commission (CL 1948, § 413.12).

5. SAME—DEATH—INFERENCES.

The finding of the workmen's compensation commission that an employee's death was due to an accident which arose out of and in the course of his employment with defendant employer, where based on the natural and reasonable inference to be drawn from the facts, is affirmed, since such an inference was not equally consistent with a liability-absolving inference (CL 1948, § 413.12).

6. EVIDENCE—INFERENCES—PRESUMPTIONS.

The reasonable inferences which may be drawn from the affirmative facts proven are evidence and not presumptions.

7. SAME—JUDICIAL NOTICE—CYANIDE.

The Supreme Court takes judicial notice that cyanide is not commonly contacted on the public streets or in the community.

8. POISONS—CYANIDE—STATUTES.

Cyanide is a deadly poison and its sale is specifically regulated by statute (CL 1948, §§ 338.424, 750.432).

9. WORKMEN'S COMPENSATION—DEATH—CYANIDE POISONING—EVIDENCE.

Workmen's compensation commission's finding that plaintiff's decedent who died from cyanide poisioning at home where he had arrived in about half an hour after leaving his work had accidentally contacted cyanide during his employment cannot

be said to be error under facts established by testimony showing an absence of cyanide in the home and its presence on defendant employer's premises in the vicinity of decedent's work location (CL 1948, § 413.12).

SHARPE, J., dissenting.

Appeal from Workmen's Compensation Commission. Submitted April 9, 1954. Docket No. 56, Calendar No. 45,837.) Decided September 8, 1954.

Theresa Zytkewick, widow of John Zytkewick, filed her petition against Ford Motor Company for compensation for husband's death from cyanide poisoning. Award to plaintiff. Defendant appeals. Affirmed.

*Rothe, Marston, Bohn & Mazey,* for plaintiff.

*William T. Gossett* (*Richard B. Darragh* and *Florian A. Lux,* of counsel), for defendant.

BUTZEL, C. J.  Theresa Zytkewick, plaintiff and appellee, following the death of her husband, John Zytkewick, as a result of cyanide poisoning, applied for compensation under the workmen's compensation act.* Ford Motor Company, defendant and appellant, the employer of the decedent, denied liability. The deputy commissioner denied the claim upon the basis that there was no evidence of a personal injury arising out of and in the course of the deceased's employment. On review before the commission, the decision of the deputy commissioner was reversed and compensation was awarded to the plaintiff for total dependency plus the statutory

---

* CL 1948, § 411.1 *et seq.* (Stat Ann 1950 Rev § 17.141 *et seq.*).—
REPORTER.

funeral allowance.† Defendant, on leave granted, has appealed.

John Zytkewick had been employed by the defendant for a period of 25 years. Just prior to his death, he had worked as a machine operator on the afternoon shift in the gear-case department in the gear and axle building at defendant's Rouge plant in Dearborn, Michigan.

On October 11, 1950, decedent arose at the usual time, ate his breakfast, and then took his morning walk. On returning home, he listened to the radio, ate his lunch, and then took a nap as was his custom. He left for work at the regular time and, according to his wife's testimony, at that time was healthy, smiling and talking to her in his usual manner. He rode to work with 4 other Ford employees who also were employed in the gear and axle building but not in the same department in which decedent worked. He left the plant that evening at 10:30 p.m., walked to the employees' parking lot, and rode part of the way home with several other employees. The testimony indicates that at the time he left the car decedent did not appear well. Decedent left the car at a point 3/4 of a mile from his home from which point he usually walked home. He arrived home at 11 p.m. His wife, who had retired for the night, heard him scraping his shoes on the porch at that time but she did not leave her bedroom and, therefore, did not see him that evening.

The next morning decedent's clothes were found on the floor near his bed; his shoes were in the bedroom. Decedent normally placed his shoes in the bathroom and hung his clothes behind the door of his bedroom. One empty beer bottle was found in the kitchen. Decedent when first seen by his wife that morning was lying face down on his bed dressed in

† CL 1948, § 412.8 (Stat Ann 1950 Rev § 17.158).—REPORTER.

his underwear. Plaintiff immediately called a doctor. A subsequent autopsy disclosed the cause of death to be cyanide poisoning. An investigation by the police some 15 days later, although admittedly not a microscopic one, failed to disclose any cans, boxes or traces of cyanide about the Zytkewick home. The doctor who testified at the hearing stated that 2-1/2 grains of cyanide, an amount 1/2 the size of the normal 5-grain aspirin tablet, was sufficient to cause death. This testimony was to the effect that an amount of cyanide sufficient to cause death could be carried under the fingernails, on the hand, or on the shoes of a person. The doctor testified that death usually resulted within 1 to 5 minutes after taking the cyanide but some persons had survived for 4 hours. He also stated that some people died after taking less than 2-1/2 grains and others survived after taking larger doses.

Defendant used sodium cyanide in the gear and axle building but the compound was not used in the department in which decedent was employed. Decedent's work location was some 420 feet from the heat-treating department where cyanide was used in large quantities in a metal hardening process. Decedent frequently walked through the heat-treating department in making his exit from the plant. Testimony indicates that the cyanide was stored in sealed or closed containers in the area around the drinking fountain located 75 feet from decedent's work location. One witness testified that, subsequent to decedent's death, he saw cyanide piled on top of these containers. The cyanide was also used in a copper-plating process about 50 feet from the decedent's work area. Testimony further indicates that stock boxes which had previously contained cyanide were used in shipping material into decedent's department and about the building. The union safety officer testified that he had made complaints about the

handling of cyanide in the building. It is plaintiff's claim that decedent accidentally contacted the cyanide while at work and that the subsequent ingestion of the cyanide was an accidental result of the original contact.

In awarding compensation the commission stated:

"The employee, the only person who would know what happened, is dead and we are without the benefit of his testimony, but certain facts are beyond dispute. He died from the ingestion of cyanide. There was cyanide present in the building in which he worked and although he did not use it in the performance of his duties, his proximity to it made contact with it possible. Potassium cyanide is not freely available to the general public and only a small quantity taken into the body results in almost instantaneous death. It is therefore a compelling inference that the poison must have entered his mouth after he returned home from work. His failure to complete his normal pre-retirement routine makes this conclusion almost inescapable. The presumptions against suicide and criminal action and the absence of any evidence to rebut these presumptions leaves the only remaining explanation that of accidental ingestion. The logical inquiry is where then did he contact the cyanide and the only reasonable answer is that he must have accidentally come in contact with the substance in the building where he worked and that he carried it home on his person. The precise manner in which it was ingested at home need not be established."

The absence of evidence to rebut the presumption against suicide or death by criminal action leaves, as stated by the commission, the remaining cause of death as that of accidental ingestion of cyanide. *Wishcaless* v. *Hammond, Standish & Co.*, 201 Mich 192; *Hawkins* v. *Kronick Cleaning & Laundry Company*, 157 Minn 33 (195 NW 766, 36 ALR 394). Defendant contends that there was no evidence that

the accidental death arose out of and in the course of the decedent's employment. Defendant further contends that the fact that there existed a possibility that the death arose out of and in the course of the employment is insufficient basis for granting the award of compensation. Defendant asserts that liability in the present case was predicated upon conjecture and speculation and not upon competent evidence. *Chaudier* v. *Stearns & Culver Lumber Company,* 206 Mich 433 (5 ALR 1673); *Hubbard* v. *Republic Motor Truck Company,* 216 Mich 358; *Wiio* v. *Quincy Mining Company,* 217 Mich 476; *Allen* v. *Robert Gage Coal Co.,* 218 Mich 347; *Wiltse* v. *Borden Farm Products Company,* 328 Mich 257.

It is the appellee's contention that the award was based upon a reasonable and natural inference from the evidence before the commission; that the circumstantial evidence in the case properly justified the commission's finding that the only logical inference that could be drawn was that decedent's death was caused by an accidental contact with cyanide during his employment. See *Rogers* v. *Ford Motor Company,* 287 Mich 104; *Dove* v. *Alpena Hide & Leather Company,* 198 Mich 132; *Frankamp* v. *Fordney Hotel,* 222 Mich 525; *Woodburn* v. *Oliver Machinery Company,* 257 Mich 109; *Dulyea* v. *Shaw-Walker Company,* 292 Mich 570.

"The department of labor and industry* may draw reasonable inferences from established facts and circumstances, but may not indulge in the assumption of a possibility based on a possibility and a consequent guess." *Marman* v. *Detroit Edison Co.,* 268 Mich 166, 169.

* The powers and duties with respect to the workmen's compensation act once vested in the industrial accident board and the department of labor and industry are now vested in the workmen's compensation commission. CL 1948, § 408.6 (Stat Ann 1950 Rev § 17.6 [6]).— REPORTER.

Was liability in the present case based upon a reasonable inference from the established facts? Or was the finding of the commission an assumption of a possibility based merely upon a possibility?

Appellant seeks to distinguish the cases cited by appellee by pointing out that each of those cases (cited above) involved injuries on the premises of the employer; therefore in those cases the personal injury was incurred in the course of the employment. The logical and reasonable inference was drawn in the above cases in concluding that the injury was accidental. Appellant apparently asserts that an inference from the established facts is permissible to establish the accidental nature of the injury but not to establish that the injury arose out of and in the course of the employment. We do not understand the proper and permissible scope of an inference to be so limited. A proper inference, the resultant of established facts, is not limited to establishing particular elements of the asserted claim.

In *Chaudier* v. *Stearns & Culver Lumber Company, supra,* this Court held:

"Where 2 inferences equally consistent with the facts arise out of established facts, one involving liability on the part of the employer under the act and the other relieving him from liability, the claimant must fail." (Syllabus.)

And in *Wishcaless* v. *Hammond, Standish & Company, supra* (p 201):

"We have often held that, if there was competent testimony upon which the conclusions of the industrial accident board* were based, we would not weigh that testimony. Section 5465, CL 1915; *Reck* v. *Whittlesberger,* 181 Mich 463 (Ann Cas 1916C, 771, 5 NCCA 917); *Rayner* v. *Sligh Furniture Co.,* 180

---

Mich 168, LRA 1916A, 22, 4 NCCA 851); *Vogeley* v. *Lumber Co.,* 196 Mich 516. * * *

"In *Papinaw* v. *Railway Co.,* 189 Mich 441 (12 NCCA 243), it was said (p 448):

" 'This claim is by a dependent of a workman who was accidentally killed, and whose evidence is therefore not available. In *Grant* v. *Railway Co.,* 1 BWCC 17, 24, it is said:

" ' "If in such a case facts are proved, the natural and reasonable inference from which is that the accident happened while the deceased was engaged in his employment, I think it falls upon the employer, if he disputes the claim, to prove that the contrary was the case." '

"Applying the principles of law above stated to the facts and circumstances shown in this case, we think the inference may be fairly drawn that deceased met with an accident which arose out of and in the course of his employment."

The scope of review in compensation cases is limited to a determination of whether there is competent evidence to support the finding of the commission.† As stated in *Neumeier* v. *City of Menominee,* 293 Mich 646, 648:

"We are not permitted to inquire into the facts, weigh the testimony and perhaps reach a different conclusion from that reached by the department. Rather, we must confine ourselves to a review of the record to determine whether or not there is any competent testimony to support the finding and award as entered."

If the inference drawn by the commission from the established facts is merely 1 of 2 equally-consistent inferences from the facts, we must reverse the award of the commission under the rule of the *Chaudier Case.* If the natural and reasonable inference to be drawn from the facts (and therefore not

---

† See CL 1948, § 413.12 (Stat Ann 1950 Rev § 17.186).—Reporter.

equally consistent with a liability-absolving inference) was that inference drawn by the commission, we must affirm the commission's finding under the authority of the *Wishcaless Case,* since there was no evidence introduced by the defendant to prove the contrary. There was evidence for the commission to make its findings, and in such a case we do not interfere with its findings.

"The reasonable inferences which may be drawn from the affirmative facts proven are evidence, and not presumptions." *Butrick* v. *Snyder,* 236 Mich 300; *Hoffman* v. *Stickney,* 338 Mich 478.

Testimony in behalf of plaintiff tended to establish the absence of cyanide in decedent's home. Although the investigation by the police was admittedly made some time after the death of the decedent, no trace of cyanide was found at the decedent's home. Mrs. Zytkewick did not know what cyanide was. The commission was justified in considering this evidence as to the absence of cyanide in the Zytkewick home.

Appellant asserts that there were numerous opportunities for decedent to contact cyanide on the way home. The testimony in the case indicates that 1/2 hour elapsed during the time decedent ceased working and the time at which he arrived home. During that time decedent walked to the employees' parking lot, rode some distance in another employee's automobile and walked a distance of 3/4 of a mile to his home. One of the myriad of possibilities hypothesized by appellant is the possibility that decedent may have orally ingested the cyanide at some bar or restaurant on the way home. We do not feel that the time sequence established by the testimony is without significance as a factor to be considered by the commission in determining that such an inference was not as equally consistent with the facts as the inference drawn. Nor need the

inference that the decedent contacted cyanide during his walk home be treated as equally consistent with the facts. Cyanide is not commonly contacted on the public streets or in the community. It is a deadly poison and its sale is specifically regulated by statute. See CL 1948, § 338.424 (Stat Ann § 14.746) and CL 1948, § 750.432 (Stat Ann § 28.687).

Under the facts established by the testimony, we cannot say that the commission was in error in concluding that a compelling inference existed that decedent accidentally contacted cyanide during his employment.

Appellant cites the *Chaudier, Hubbard* and *Wiio Cases, supra,* as controlling authority. In the *Chaudier Case* decedent died from alkaline poisoning attributable to the presence of ashes and lye in his stomach. In that case the presumption against suicide was rebutted by medical testimony that conscious effort was essential to the ingestion of the quantity of the poisonous substance found in decedent's stomach. In the *Hubbard Case* decedent died of septic poisoning that developed from a scratch and resulting infection. Testimony indicated that the decedent could have suffered the scratch while doing many chores about his home as well as at work. In the *Wiio Case* decedent died of blood poisoning that developed from a scratch. In denying compensation this Court, as in the *Hubbard Case,* held that the decedent could have suffered the scratch while doing chores at home. In the *Hubbard* and *Wiio Cases* there was no showing that the injury was incurred while at work. Appellant claims that since in the present case there is no evidence, aside from the inference, that decedent contacted cyanide while at work the claim must be denied. But it is to be noted that in the *Hubbard* and *Wiio Cases* the injuries were of the type commonly sustained outside of the course of employment and not

significantly associated with the decedent's place of employment. Nor are the facts of the present case analogous to the *Wiltse* and *Allen Cases, supra.* In the *Wiltse Case* the back injury for which the claimant sought compensation was as apt to be caused by bowling, slipping, getting out of bed, or stepping off a curb as by lifting milk cans while at work. In the *Allen Case* there was no evidence of marks or bruises indicating an external injury such as a fall or electrocution by contact with a cable; the cause of death could not be determined to be accidental and not due to natural causes; death by reason of heart disease was consistent with the available facts.

There is in the present case testimony negativing the probability that the cyanide was contacted while away from work. Aside from hypotheses of appellant, there is no indication of a source of contact of this deadly poison outside of the work area.

The award is affirmed, with costs to the plaintiff.

CARR, BUSHNELL, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred with BUTZEL, C.J.

SHARPE, J. (*dissenting*). I am unable to concur in the opinion of Mr. Chief Justice BUTZEL. In this case, as in all other compensation cases, claimant must produce affirmative evidence to sustain the burden of proof that decedent suffered an accidental injury arising out of and in the course of his employment. The law applicable to the facts in this case is well stated in *Wiltse* v. *Borden's Farm Products Company,* 328 Mich 257, where we again quoted and approved of the following (p 265):

" '(1) The burden of proving a right to compensation is on the party asserting that right. *Pucilowski* v. *Packard Motor Car Co.,* 278 Mich 240; *Veek* v. *Wesley Freight Co.,* 306 Mich 485. (2) In awarding compensation to a plaintiff, the department may not

indulge in the assumption of a mere possibility in the nature of a guess as to whether plaintiff is entitled to compensation. *Ginsberg* v. *Burroughs Adding Machine Co.*, 204 Mich 130, 137; *Marman* v. *Detroit Edison Co.*, 268 Mich 166. (3) Workmen's compensation provided by the act is not intended to be either sickness, health, or life insurance or to provide benefits for employees suffering from ordinary diseases of life.' (Citing numerous cases.) *Riley* v. *Kohlenberg*, 316 Mich 144, 148.

" ' "If an inference favorable to the applicant can only be arrived at by conjecture or speculation the applicant may not recover. So if there are 2 or more inferences equally consistent with the facts, arising out of the established facts, the applicant must fail." ' *Chaudier* v. *Stearns & Culver Lumber Co.*, 206 Mich 433, 442 (5 ALR 1673), quoting *Ginsberg* v. *Burroughs Adding Machine Co.*, 204 Mich 130, wherein numerous cases are cited.

"The rules just above stated have been adhered to and made the basis of decision in recent cases of this Court. See *Cromie* v. *Florez, Incorporated*, 317 Mich 516; *Trumble* v. *Michigan State Police*, 325 Mich 237; *Daniel* v. *Murray Corporation of America*, 326 Mich 1."

In writing for affirmance, Mr. Chief Justice BUTZEL bases his opinion upon the following:

"Under the facts established by the testimony, we cannot say that the commission was in error in concluding that a compelling inference existed that decedent accidentally contacted cyanide during his employment."

The commission, in making an award, reasoned as follows:

"There was cyanide present in the building in which he worked and although he did not use it in the performance of his duties, his proximity to it made contact with it possible. * * *

"The logical inquiry is where then did he contact the cyanide and the only reasonable answer is that he must have accidentally come in contact with the substance in the building where he worked and that he carried it home on his person. The precise manner in which it was ingested at home need not be established."

It is the purest speculation to say that decedent came in contact with cyanide while at work, as his work did not call for the use or handling of cyanide in any form. Moreover, his work was about 420 feet from the place where cyanide was used. There is no evidence that decedent walked through the heat-treat department on the night in question. There is some conjecture that decedent got cyanide on his shoes and from them to his mouth. Again, this in conjecture of the purest kind. It was also advanced that possibly decedent got cyanide under his fingernails and later in his mouth after he reached home. The record clearly shows that decedent had no opportunity while at work to get cyanide on his clothes or any part of his body. We need not surmise how decedent received or when he ingested the cyanide, as this burden does not fall on defendant. Claimant has the burden of showing that decedent came in contact with cyanide during the course of his employment. There is no basis for an award in the case at bar. The award should be reversed and remanded for entry of an order denying compensation. Defendant should recover costs.